**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE:**

Meridian Products LLC,

                           Plaintiff

                v.                        Court No.: 13-00018

United States,

                           Defendant.

## COMPLAINT

1.     Plaintiff, Meridian Products LLC ("Meridian") by and through its attorneys, alleges herein as follows:

## ADMINISTRATIVE DETERMINATION TO BE REVIEWED

2.     This action is brought pursuant to 28 U.S.C. §1581(c). Plaintiff contests the U.S. Department of Commerce's ("the Department") final scope determination issued on December 18, 2012, concerning the antidumping and countervailing duty orders on aluminum extrusions from the People's Republic of China ("PRC"). See Memorandum to Christian Marsh, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, through Melissa G. Skinner, Director, Office 8, Operations, from Eric B. Greynolds, Program Manager, and John Conniff, Senior Trade Analyst, Regarding Final Scope Ruling on Refrigerator/Freezer Trim Kits (Dec. 18, 2012) ("Scope Ruling").

## JURISDICTION

3.     The Court has jurisdiction over this action pursuant to 28 U.S.C. §1581(c), as this action is commenced under Section 516A(a)(2)(A)(ii) and (B)(vi) of the Tariff Act of 1930, *as amended*, 19 U.S.C. §1516a(a)(2)(A)(ii) and (B)(vi).

**STANDING**

4.     Plaintiff is a U.S. importer of merchandise that the Department has held to be within the scope of the <u>Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order</u>, 76 Fed. Reg. 30650 (May 26, 2011) ("Antidumping Duty Order") and the <u>Aluminum Extrusions from the People's Republic of China:  Countervailing Duty Order</u>, 76 Fed. Reg. 30653 (May 26, 2011) ("Countervailing Duty Order") in the Scope Ruling.  Therefore, plaintiff is an "interested party" within the meaning of 19 U.S.C. §1516a(f)(3) and 1677(9)(A) and 28 U.S.C. §2631(k)(1).

5.     Plaintiff participated in the administrative proceeding that is the subject of this challenge, and accordingly has standing to commence this action pursuant to 28 U.S.C. §2631(c).

**TIMELINESS OF ACTION**

6.     Plaintiff commenced this action by filing a Summons on January 10, 2013.  The Scope Ruling was dated December 18, 2012.  The Summons was therefore timely filed pursuant to 19 U.S.C. §1516a(a)(2)(A)(ii) and pursuant to Rules 3(a)(2) and 6(a) of this Court.

**FACTUAL HISTORY**

7.     On March 31, 2010, the Aluminum Extrusions Fair Trade Committee and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union (collectively, "Petitioners") filed a petition with the Department and the United States International Trade Commission ("ITC") alleging that an industry in the United States was materially injured or threatened with material injury by reason of less than fair value and subsidized imports of certain aluminum extrusions from China.

8.     In April of 2010, the Department initiated an antidumping duty investigation to determine whether certain aluminum extrusions from the PRC were being, or were likely to be,

sold in the United States at less than fair value. <u>Aluminum Extrusions from the People's Republic of China: Initiation of Antidumping Duty Investigation</u>, 75 Fed. Reg. 22109 (April 27, 2010).

9.     In April of 2010, the Department initiated a countervailing duty investigation to determine whether certain aluminum extrusions from the PRC received countervailable subsidies. <u>Aluminum Extrusions from the People's Republic of China: Initiation of Countervailing Duty Investigation</u>, 75 Fed. Reg. 22114 (April 27, 2010).

10.    In its Notices of initiation of the antidumping duty investigation and of the countervailing duty investigation, the Department stated that the scope of both of the investigations on aluminum extrusions from the PRC excluded

> finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry, such as finished windows with glass, doors, picture frames, and solar panels. The scope also excludes finished goods containing aluminum extrusions that are entered unassembled in a 'kit.' A kit is understood to mean a packaged combination of parts that contains, at the time of importation, all of the necessary parts to fully assemble a final finished good.

75 Fed. Reg. at 22114, 22118.

11.    In June 2010, the ITC found that there was a reasonable indication that imports of certain aluminum extrusions from the PRC were materially injuring, or threatening material injury to, a U.S. industry. <u>See Certain Aluminum Extrusions From China: Investigation Nos. 701-TA-475 and 731-TA-1177 (Preliminary)</u>, USITC Pub. 4153 (June 2010) ("ITC Preliminary Determination").

12.    In the ITC's Preliminary Determination, when describing the domestic like product to the aluminum extrusions from the PRC which were the subject of the investigation, the ITC stated that "all subject extrusions share general physical characteristics and tolerances

along a continuum and all are used as inputs (*i.e.*, an intermediate product) in the production of downstream products." ITC Preliminary Determination at I-8 – I-9.

13.     In April 2011, the Department found that certain aluminum extrusions from the PRC were being, or were likely to be, sold in the United States at less than fair value. <u>Aluminum Extrusions From the People's Republic of China: Final Determination of Sales at Less Than Fair Value</u>, 76 Fed. Reg. 18524 (April 4, 2011).

14.     In April 2011, the Department issued its final affirmative countervailing duty determination regarding certain aluminum extrusions from the PRC. <u>Aluminum Extrusions from the People's Republic of China: Final Affirmative Countervailing Duty Determination</u>, 76 Fed. Reg. 18521 (April 4, 2011).

15.     In May 2011, the ITC notified the Department that imports of certain aluminum extrusions from the PRC were materially injuring a United States industry. <u>See Certain Aluminum Extrusions from the People's Republic of China: Investigation Nos. 701-TA475 and 731-TA-1177 (Final)</u>, USITC Pub. 4229 (May 2011) ("ITC Final Determination").

16.     On May 26, 2011, the Department issued an antidumping duty order regarding certain aluminum extrusions from the PRC. <u>Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order</u>, 76 Fed. Reg. 30650 (May 26, 2011) ("Antidumping Duty Order").

17.     On May 26, 2011, the Department issued a countervailing duty order regarding certain aluminum extrusions from the PRC. <u>Aluminum Extrusions from the People's Republic of China: Countervailing Duty Order</u>, 76 Fed. Reg. 30653 (May 26, 2011) ("Countervailing Duty Order").

18.     Both the Antidumping Duty Order on certain aluminum extrusions from the PRC

and the Countervailing Duty Order on certain aluminum extrusions from the PRC contained the following description of merchandise excluded from the scope of both of these Orders:

> The scope also excludes certain finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry, such as finished windows with glass, doors with glass or vinyl, picture frames with glass pane and backing material, and solar panels.  The scope also excludes finished goods containing aluminum extrusions that are entered unassembled in a 'finished goods kit.'  A finished goods kit is understood to mean a packaged combination of parts that contains, at the time of importation, all of the necessary parts to fully assemble a final finished good and requires no further processing or fabrication, such as cutting or punching, and is assembled 'as is' into a finished product.  An imported product will not be considered a 'finished goods kit' and therefore excluded from the scope of the investigation merely by including fasteners such as screws, bolts, etc. in the packaging with an aluminum extrusion product.

19.    On November 13, 2012, Meridian requested that the Department determine whether certain completed refrigerator trim kits ("trim kits") were outside of the scope of the Antidumping Duty Order and Countervailing Duty Order.  See Letter from Daniel Cannistra, Crowell & Moring LLP, to the Secretary of Commerce, Antidumping and Countervailing Duty Orders on Aluminum Extrusions from the People's Republic of China: Request for Scope Ruling for Refrigerator/Freezer Trim Kits (Nov. 13, 2012) ("Scope Ruling Request").

20.    Trim kits consist of three different styles of complete aluminum trim kit packages which are utilized as an aesthetic frame around the perimeter of (though not attached to) a major home kitchen appliance.  Trim kits enhance the appearance of the cabinetry surrounding the appliance in the consumer's home and lends a customized, "built-in" look.  The major appliance units for which the trim packages apply are stand alone freezers, stand alone refrigerators, and freezer plus refrigerators.  A representative photograph of an installed trim kit is included in Attachment 1.

21.    Trim kits are sold as a package of finished parts which when assembled will make up a customized frame to fit around a single freezer unit or a single refrigerator unit. Each trim kit consists of extruded aluminum forms, made from aluminum alloy having elements corresponding to the alloy series designation published by the Aluminum Association commencing with the number 6. Trim kits include a customer installation kit, consisting of a hexagonal wrench and fasteners used by the user during assembly. A set of instructions written in English, Spanish, and French is also included in the installation kit.

22.    In its November 13, 2012 Scope Ruling Request, Meridian provided substantial evidence that that the trim kits at issue are outside the scope of the Antidumping Duty Order and Countervailing Duty Order because they are "finished goods kits" containing aluminum extrusions that entered unassembled, and contained, at the time of importation, all of the necessary parts to fully assemble a final finished good and required no further finishing or fabrication, such as cutting or punching, and were assembled "as is" into a finished product.

23.    On December 18, 2012, the Department issued its Final Scope Ruling regarding Meridian's trim kits. See Scope Ruling.

24.    In the Scope Ruling, the Department found that Meridian's trim kits fall within the scope of the Antidumping Duty Order and Countervailing Duty Order because they do not fall under the exclusion for "finished goods kits". See Scope Ruling at 10.

## CLAIMS AND BASES FOR RELIEF

### COUNT 1

25.    Paragraphs 1-25 are incorporated here by reference.

26.    The Department's determination in the Scope Ruling relies on an erroneous reading of the descriptions of the scope in the orders.

27. The Department argues that the trim kits are not excluded as "finished goods kits" because the scope expressly includes aluminum extrusions which are identified by reference to their end use. See Scope Ruling at 10. This is an incorrect reading of the scope description in the orders, as the finished goods kit exclusion does not apply merely when the merchandise in question is not specifically included in the scope. If the merchandise qualifies as a "finished goods kit", then it is excluded from the scope of the orders. See 76 Fed. Reg. 30650, 30651; 76 Fed. Reg. 30653, 30654.

28. The Department argues that the trim kits are not excluded as "finished goods kits" because they consist entirely of aluminum extrusions. See Scope Ruling at 10. This is an incorrect reading of the scope description, as there is no requirement that the combination of parts in a finished goods kit have some non-aluminum extrusion component to qualify for the finished goods kit exclusion. See 76 Fed. Reg. 30650, 30651; 76 Fed. Reg. 30653, 30654.

29. As Plaintiff demonstrated in its Scope Ruling Request, Plaintiff's trim kits meet the definition of "finished goods kits" exactly and completely. The trim kits are packaged combinations of parts that contain all the necessary parts to fully assemble a final finished good. The components in the trim kits require no further finishing or fabrication. Finally, the trim kits are assembled "as is" into a finished product. See Scope Ruling Request.

30. "Final finished goods" are goods that do not serve as inputs for the production of downstream products but rather can be sold for immediate consumer use. Furthermore, it is not necessary for the goods to include a complete array of accessories in order for them to qualify as "final finished goods" or "finished products". See Memorandum to Christian Marsh, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, through Melissa G. Skinner, Director, Office 3, Operations, from John Conniff, Senior Trade Analyst, and Eric B.

Greynolds, Program Manager, Regarding Final Scope Ruling on Banner Stands and Back Wall Kits (Oct. 19, 2011).

31. As Plaintiff demonstrated in its Scope Ruling Request, Plaintiff's trim kits are final finished goods because they are marketed and sold by retailers such as Amazon and Best Buy directly to consumers as standalone products and they do not serve as inputs for the production of downstream products.  See Scope Ruling Request.  Moreover, the fact that they are sold unaccompanied by home appliances or other accessories does not disqualify them as final finished goods.

32. The Department's Scope Ruling contains an analysis of the section of the finished goods kit exclusion that says goods will not qualify for the exception "merely by including fasteners such as screws, bolts, etc. in the packaging with an aluminum extrusion product" The Department concludes that this is an "*exception to the exclusion*".  See Scope Ruling at 11 (emphasis added).  This section is not an exception to the exclusion, and it does not, as the Department's conclusion suggests, disqualify all aluminum extrusion products containing fasteners from being excluded from the scope as finished goods kits.  This section is merely a sensible clarification that the addition of fasteners will not automatically qualify an aluminum extrusion product as a "finished goods kit".  The Department "cannot 'interpret' an antidumping order so as to change the scope of that order, nor can [it] interpret an order in a manner contrary to its terms."  Eckstrom Indus., Inc. v. United States, 254 F.3d 1068, 1072 (Fed. Circ. 2001) (citing Wheatland Tube Co. v. United States, 161 F.3d 1365, 1370 (Fed. Cir. 1998)).  Here, the Department's interpretation of this provision improperly expands the scope of the orders in a manner that is contrary to its terms to include all aluminum extrusion products with fasteners.

33. For these reasons, the Department's Scope Ruling declaring that Plaintiff's trim kits are

not excluded from the scope of the orders was unlawful, was not based upon substantial evidence of record, and was not otherwise in accordance with the law.

34.     Plaintiff requests that the Court enter judgment in favor of Plaintiff, declare that the Department erred in its Scope Ruling as alleged herein, and remand this matter to the Department with instructions to exclude Meridian's trim kits from the scope of the Antidumping Duty Order and Countervailing Duty Order.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court declare that the Department erred in the final scope ruling as alleged herein and remand this matter to the Department with instructions to exclude Plaintiff's certain refrigerator/freezer trim kits from the scope of the Antidumping Duty Order and Countervailing Duty Order.  Plaintiff also asks that the Court provide such additional relief as it deems just and appropriate.

        Respectfully submitted,


        /s/ Daniel Cannistra

        Daniel Cannistra

        **Crowell & Moring LLP**
        1001 Pennsylvania Avenue NW
        Washington, DC 20004
        Telephone (202) 624-2500
        Facsimile (202) 628-5116
        Attorney for Plaintiff

Dated:  January 10, 2013

## ATTACHMENT 1



http://www.homedepot.com/buy/whirlpool-sidekicks-trim-kit-for-whirlpool-models-skt60s.html