Slip Op. 14 - 32

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| MERIDIAN PRODUCTS, LLC, | : |
| Plaintiff, | : |
| v. | : Before: R. Kenton Musgrave, Senior Judge |
|  | : Court No. 13-00018 |
| UNITED STATES, | : |
| Defendant. | : |

**OPINION AND ORDER**

[Remanding first results of remand of anti-dumping and countervailing duty orders on aluminum extrusions from the People's Republic of China.]

Dated: March 26, 2014

*Daniel Cannistra* and *Richard P. Massony*, Attorneys, Crowell & Moring LLP, of Washington DC, for the plaintiff.

*Tara K. Hogan*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington DC, for the defendant. On the brief were *Stuart F. Delery*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Reginald T. Blades*, Jr., Assistant Director. Of counsel on the brief was *Joanna Theiss*, Attorney, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, of Washington DC.

Musgrave, Senior Judge: The plaintiff Meridian Products LLC, a U.S. importer of refrigerator/freezer trim kits ("Trim Kits"), challenges the *Final Results of the Redetermination Pursuant to Court Remand, Meridian Products, LLC v. United States*, Ct. No. 13-00018 (Aug. 15, 2013) of the International Trade Administration of the U.S. Department of Commerce ("Commerce"). *See Meridian Products, LLC v. United States*, Court No. 13-00018, Slip Op. 13-75

(2013) ("Opinion"). In the Opinion, the court ordered Commerce to reconsider the Trim Kits under the finished goods scope exclusion of the anti-dumping and countervailing duty orders ("Orders") on aluminum extrusions from the People's Republic of China,[1] as applied in the *Valves Ruling, Auto Parts Remand* and *Drapery Rail Kits Remand*.[2]

The plaintiff now moves for a second remand of this action, claiming that Commerce failed to apply the "revised test for finished goods" to the Trim Kits and that Commerce's remand analysis of the Trim Kits was unlawful. Plaintiff's Comments in Response to Redetermination upon Remand ("Pl's Comm. in Resp.") at 1, 10-11. Commerce asks the court to affirm the results of the remand, arguing that it complied with the court's orders in the Opinion and that its remand determination is both supported by substantial evidence and otherwise in accordance with law. Defendant's Response to Comments Regarding the Remand Redetermination ("Def's Reply to Comm.") at 2, 14.

---

[1] *See Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order*, 76 Fed. Reg. 30650 (May 26, 2011) ("AD Order") & *Aluminum Extrusions from the People's Republic of China: Countervailing Duty Order*, 76 Fed. Reg. 30653 (May 26, 2011) ("CVD Order") (collectively, "the Orders").

[2] Opinion at 4, referencing Memorandum to Christian Marsh, "Initiation and Preliminary Scope Ruling on Side Mount Valve Controls" (Sep. 24, 2012), *aff'd*, Final Scope Ruling on Side Mount Valve Controls (Oct. 26, 2012) ("*Valves Ruling*"); *Final Results of Redetermination Pursuant to Court Remand*, Rowley Co. v. United States, Ct. No. 12-00055 (Feb. 28, 2013) ("*Drapery Rail Kits Remand*"); *Final Results of Redetermination Pursuant to Court Remand Aluminum Extrusions from the People's Republic of China, Valeo, Inc., Valeo Engine Cooling Inc., and Valeo Control Corp. v. United States*, Ct. No. 12-00381 (Feb. 13, 2013) ("*Auto Parts Remand*").

Upon review of the remand results, the court finds that although Commerce reasonably defined the "finished goods kit" exclusion methodology, as applied in the *Drapery Rail Kits Remand* and *Solar Panel Mounting Ruling*[3], its conclusion that the Trim Kits do not qualify as goods intended to "display customizable materials" or "work with removable/replaceable parts" and do not merit application of the methodology from the rulings is not supported by substantial evidence. The court remands to Commerce to evaluate the Trim Kits under the revised finished goods exclusion methodology announced in the *Drapery Rail Kits Remand* and *Solar Panel Mounting Ruling*.

I. *Background*

A. Scope Ruling on Trim Kits

Commerce published the Orders that covered "[a]luminum extrusions which are shapes and forms, produced by an extrusion process, made from aluminum alloys . . .". The Orders contain an exclusion for otherwise subject merchandise that is considered "finished merchandise" or a "finished goods kit." That exclusion is as follows:

> The scope also excludes certain *finished merchandise* containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry, such as finished windows with glass, doors with glass or vinyl, picture frames with glass pane and backing material, and solar panels. The scope also excludes finished goods containing aluminum extrusions that are entered unassembled in a "*finished goods kit*." A *finished goods kit* is understood to mean a packaged combination of parts that contains, at the time of importation, all of the necessary parts to fully assemble a final finished good and requires no further processing or fabrication, such as cutting or punching, and is assembled 'as is' into a finished product.

---

[3] Memorandum to Christian Marsh, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, "Final Scope Ruling on Clenergy (Xiamen) Technology's Solar Panel Mounting Systems" (Oct. 31, 2012) ("*Solar Panel Mounting Ruling*").

76 Fed. Reg. at 30651 and 30654 (italics added).

>The scope language also clarifies that an imported product

>[w]ill not be considered a "*finished goods kit*" and therefore excluded from the scope of the investigation merely by including fasteners such as screws, bolts, etc. in the packaging with an aluminum extrusion product.

*Id.* (italics added).  The plaintiff requested a scope ruling[4] on its Trim Kits, which it describes as

>consist[ing] of three different styles of complete aluminum trim kit packages which are utilized as an aesthetic frame around the perimeter of (though not attached to) a major home kitchen appliance.  Trim kits enhance the appearance of the cabinetry surrounding the appliance in the consumer's home and lends a customized, "built-in" look.  The major appliance units for which the trim packages apply are stand alone freezers, stand alone refrigerators and freezer plus refrigerators.

>Trim kits are sold as a package of finished parts which when assembled will make up a customized frame to fit around a single freezer unit or a single refrigerator unit.  Each trim kit consists of extruded aluminum forms, made from aluminum alloy having elements corresponding to the alloy series designation published by the Aluminum Association commencing with the number 6.  Trim kits include a customer installation kit, consisting of a hexagonal wrench and fasteners used by the user during assembly.  A set of instructions written in English, Spanish, and French is also included in the installation kit.

*See* Complaint at ¶¶ 20-21.[5]

---

[4] *See* Letter from Daniel Cannistra, Crowell & Moring LLP, to the Secretary of Commerce, Antidumping and Countervailing Duty Orders on Aluminum Extrusions from the People's Republic of China: Request for Scope Ruling for Refrigerator/Freezer Trim Kits (Nov. 13, 2012) ("*Scope Ruling Request*").

[5] *See also* Memorandum to Christian Marsh, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, through Melissa G. Skinner, Director, Office 8, Operations, from Eric B. Greynolds, Program Manager, and John Conniff, Senior Trade Analyst, "Final Scope Ruling on Refrigerator, Freezer Trim Kits" (Dec. 18, 2102) ("*Scope Ruling*") at 2.  Meridian emphasizes that the products at issue enter the United States under the Harmonized Tariff Schedule of the United States, subheading 8418.99.8060, which provides for other parts for refrigerators, freezers and other refrigerating or freezing equipment.

Court No. 13-00018                                                                                                    Page 5

In the *Scope Ruling Request*, the plaintiff argued that Commerce should find that its Trim Kits were excluded from the scope of the Orders as "finished goods kits." *Id*. ¶ 22, referencing *Scope Ruling Request*.

In its final scope determination, Commerce rejected the plaintiff's arguments and found that the Trim Kits were unambiguously included in the scope of the Orders as subject aluminum extrusions identified by reference to their end use.[6] Commerce concluded that the Trim Kits are like the geodesic dome frame kits in a previous ruling[7] and met the initial requirements for the finished good kits exclusion, but it also found that the Trim Kits consisted entirely of aluminum extrusions, fasteners, and extraneous materials and accordingly did not qualify for the exclusion.[8]

### B.  Remand Request and Results

The plaintiff challenged Commerce's Scope Ruling before this court, and moved for immediate remand pursuant to USCIT Rule 7, arguing that

> Commerce has admittedly changed the way it determines whether a product qualifies for the finished goods exclusion. This change is explicitly stated in Commerce's final scope ruling on side mount valve controls . . . , and it is also apparent in Commerce's redetermination regarding drapery rail kits.

---

[6] *Scope Ruling* at 3, 9-11, *see* Orders, which provide that "[s]ubject extrusions may be identified with reference to their end use, such as fence posts, electrical conduits, door thresholds, carpet trim, or heat sinks (that do not meet the finished heat sink exclusionary language below). Such goods are subject merchandise if they otherwise meet the scope definition, regardless of whether they are ready for use at the time of importation".

[7] *See* Memorandum to Christian Marsh, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, "Final Scope Ruling on J.A. Hancock, Inc.'s Geodesic Structures" (July 17, 2012) ("*Geodesic Domes Scope Ruling*").

[8] *Scope Ruling* at 5, citing *Geodesic Domes Scope Ruling* at 7. *See also id.* at 11, citing the scope of the Orders.

Plaintiff's Motion for Remand (Mar. 12, 2013) ("Pl's Mot. for Remand") at 1, referencing *Valves Ruling, Drapery Rail Kits Remand*. *See* Opinion at 2-3. Commerce opposed the motion as premature, lacking ground for deviation from USCIT Rule 56.2 procedure, and substantively failing the plaintiff's obligation to exhaust administrative remedy. At the time, however, since the issue simply seemed to involve proper, legal administrative interpretation of the scope issue and no third-party interests,[9] and USCIT Rule 1 requires the "just, speedy, and inexpensive determination of every action and proceeding", the court granted the plaintiff's motion and ordered Commerce on remand to "reopen the record and permit the plaintiff to submit arguments . . . as to why the trim kits satisfy the finished goods exclusion under the *Valves Ruling* and the remands in the *Drapery Rail Kits* and *Auto Parts* cases".[10]

On remand, Commerce determined that the "revised" finished goods exclusion analysis from the three referenced rulings was not applicable to the Trim Kits because they are not analogous to the goods considered in those rulings.[11] Commerce continued to find that the Trim Kits are included in the scope of the Orders as subject aluminum extrusions identified by reference to their end use, and that they did not qualify under the finished goods exclusion.[12]

---

[9] *Cf. Meridian Products LLC v. United States*, Slip Op. 14-20 (Feb. 19, 2014) (denying USCIT 7 motion for remand in order to consider the applicability *of Mid Continent Nail Corp. v. United States*, 725 F.3d 1295 (Fed. Cir. 2013)).

[10] Opinion at 4, *see Valves Ruling*, *Drapery Rail Kits Remand*, and *Auto Parts Remand*.

[11] Remand at 11-16, 23, Def's Reply to Comm. at 5-6.

[12] *See* Remand at 10-23. Commerce determined the Trim Kits are analogous to carpet trim, an item explicitly covered by the language of the Orders.

The plaintiff requests further remand, arguing that Commerce did not apply the revised test in the rulings as ordered but instead created new limitations for the "finished goods exclusion."[13] The plaintiff contends that even if these limitations exist, the Trim Kits are analogous to the products covered under the limitations.[14] The plaintiff also argues on several grounds that the remand was unlawful.[15] Commerce filed its reply to the plaintiff's comments and argues that the remand results should be confirmed in all respects. Commerce argues that it fully complied with the courts instructions in the Opinion, and that its determinations are otherwise in accordance with law and supported by substantial evidence. Def's Reply to Comm. at 2, 14.

II. *Jurisdiction and Standard of Review*

Jurisdiction is proper pursuant to 28 U.S.C. § 1581(c) (2006). The court sustains Commerce's determination upon remand if it "complies with the court's remand order, is supported by substantial evidence on the record, and is otherwise in accordance with law." *Jinan Yipin Corp. v. United States*, 33 CIT 934, 637 F. Supp. 2d 1183, 1185 (2009), citing 19 U.S.C. §1516a(b)(1)(B)(i) (2000). Substantial evidence "is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol.*

---

[13] *See* Remand at 7-9, Pl's Comm. in Resp. at 1, 4-6, 10-11.

[14] *Aluminum Extrusions for the People's Republic of China: Comment Following Remand Regarding Refrigerator/Freezer Trim Kits* (July 1, 2013) ("Pl's Remand Submission") at 4, Remand at 9, 15, Pl's Comm. in Resp. at 5.

[15] Pl's Comm. in Resp. at 1-2,7-11. Plaintiff contends the remand was unlawful because Commerce erroneously conducted its analysis as though Trim Kits were made entirely of aluminum extrusions, based its decision on the drafter's intent which is a factor outside of the permissible regulatory interpretive considerations, and conducted its evaluation in a manner that is in conflict with its own general principle of interpretation.

*Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *see also Micron Tech., Inc v. United States*, 117 F.3d 1386, 1393 (Fed. Cir. 1997). To support judicial review, "the path of Commerce's decision must be reasonably discernable". *Jinan Yipin Corp., Ltd. v. United States*, 35 CIT ___, 800 F. Supp. 2d 1226, 1233 (2011), quoting *NMB Singapore Ltd. v. United States*, 557 F.3d 1316, 1319 (Fed. Cir. 2009), citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see also Timken U.S. Corp. v. United States*, 421 F.3d 1350, 1355 (Fed. Cir. 2005) (explaining that "it is well settled that an agency must explain its action with sufficient clarity to permit 'effective judicial review,'" and that "[f]ailure to provide the necessary clarity requires the agency action be vacated"), quoting *Camp v. Pitts*, 411 U.S. 138, 142-43 (1973).

### III. *Discussion*

#### A. Agency-defined Methodology

On remand, the definition of revised finished goods exclusion methodology from the *Drapery Rail Kits Remand* and *Solar Panel Mounting Ruling* expressed by Commerce was reasonable and supported by the language of the rulings. The plaintiff's contention that Commerce created an unsupported limitation for the finished goods exclusion and effectively applied the wrong finished goods test on remand fails to recognize the entirety of the language of the ruling, as well as the rationale expressed for the revision to the exclusion.[16]

As reflected in the language of the Orders and discussed in the *Solar Panel Mounting Ruling*, Commerce generally requires a product to meet two criteria to be excluded as a "finished goods kit." To qualify, the product must (1) include all of the necessary parts to fully assemble a

---

[16] Pl's Comm. in Resp. at 1-5, Def's Reply to Comm. at 6-9.

Court No. 13-00018                                                                                              Page 9

final finished good with no further processing or fabrication, such as cutting or punching, and (2) be capable of assembly "as is" into a finished product. *See Solar Panel Mounting Ruling* at 9, *see also* scope of Orders. The plaintiff argues that the proper revised test for a "finished goods kit," as applied in the *Drapery Rail Kits Remand*, is "[i]n order for [the product] to be excluded from the scope of the Orders, it must be ready for installation and require no further finishing or fabrication".[17] Citing to the *Solar Panel Mounting Ruling*, the plaintiff claims that Commerce also evaluates if a kit contains all the necessary parts to fully assemble a finished good "as is" into a finished product when applying the test.[18] The plaintiff contends that on remand, instead of identifying the new test or providing an analysis of the test criteria, Commerce created a limitation for the application of the criteria to products intended to "display or incorporate interchangeable and customizable materials" or "work with removable/replaceable components." The plaintiff argues that such a limitation is not supported by the scope language or prior scope rulings, and that Commerce provides no evidence to support considering a product's ability to display customizable materials as having any bearing on whether it is a finished good.[19] Thus, the plaintiff maintains, such a limitation erroneously "foreclose[s] [Commerce's] application of the finished goods analysis to Meridian's products".[20]

---

[17] The plaintiff claims this test is also supported by the methodology adopted in the *Valves Ruling* and applied in the *Auto Parts Remand*. Pl's Comm. in Resp. at 1-6, *see* Remand at 7-8, citing Pl's Remand Submission at 2-3, citing *Valves Ruling* at 7-8.

[18] Remand at 8-9, referencing Pl's Remand Submission at 3, citing *Solar Panel Mounting Ruling* at 8.

[19] *See* Remand at 8-9, Pl's Comm. in Resp. at 4-6.

[20] Pl's Comm. in Resp. at 1.

Commerce's conclusions in its antidumping and countervailing duty determinations are entitled to deference if reasonable and supported by substantial evidence. *See Mitsubishi Materials Corp. v. United States*, 17 CIT 301, 303-04, 820 F.Supp. 608, 613 (1993) (citations omitted). On remand, Commerce determined that the *Drapery Rail Kits Remand* and *Solar Panel Mounting Ruling* established that,

> a finished goods kit which is designed to *display **or** incorporate customizable materials **or** work with removable/replaceable components* will be excluded if it contains, at the time of importation, all of the parts necessary to assemble a final finished good for such purposes.

Remand at 14 (bolding added; original emphasis otherwise). It can reasonably be inferred from the remand language that Commerce intends for three types of goods to be considered full-assembly final-finished goods even if they are imported without a part of the kit, provided they contain at the time of importation all of the parts necessary to assemble a final finished good "for such purposes." The *Drapery Rails Remand* and *Solar Panel Mounting Ruling* provide support for Commerce's determination to limit the application of the revised methodology to these types of goods.

The *Drapery Rails Remand* supports Commerce's determination by demonstrating that two types of goods qualify as a "finished goods kit" capable of creating a fully assembled finished good even when imported without a customizable part of the kit; (1) those products that are "designed to *incorporate* customizable goods" and (2) those products that are "designed to *display* customizable goods" (italics added). At issue in the ruling were "drapery rail kits" consisting of an aluminum rail, threaded round bracket, and a decorative bracket and finials to be used for functional and aesthetic drapery purposes. Commerce analyzed if the kits, designed with the intent of attaching or incorporating curtains or drapes and containing all of the pieces required for a consumer to install

Court No. 13-00018                                                                                             Page 11

and use the product for drapery purposes, were properly excludable from the Orders as a "finished goods kit."[21]  In making its determination, Commerce considered the *Banner Stands*[22] and *EZ Wall Systems Rulings*[23] that involved wall display units designed to exhibit interchangeable and customizable graphical materials.  It found that the drapery rail kits were analogous to the display units in the rulings and the picture-frame-with-backing-and-glass express exclusion, and that like these products the drapery rail kits "contain all of the parts necessary to assemble a drapery rail system, save for the decorative drapes or curtains that may be affixed at a later date, and are designed to meet the specifications of the end customer."[24]  Relying on a rationale similar to the one it expressed in the two display-unit rulings, Commerce concluded that it would be "unreasonable to require that the drapery rail kits at issue be accompanied at the time of importation with decorative drapes that are intended to be customizable" to qualify for the "finished goods kit" exclusion.[25]

---

[21] *Drapery Rail Kits Remand* at 4, 5, 8, *see* Remand at 12.

[22] Memorandum to Christian Marsh, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, "Final Scope Ruling on Banner Stands and Back Wall Kits" (Oct. 19, 2011) ("*Banner Stands Ruling*") at 9-10.

[23] Memorandum to Christian Marsh, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, "Final Scope Ruling on EZ Fabric Wall Systems" (Nov. 2011) ("*EZ Wall Systems Ruling*") at 9-10.

[24] *Drapery Rail Kits Remand* at 7-9, citing the scope of the Orders ("just as with a photograph inserted into a completed picture frame (i.e., a frame containing glass and backing) or material containing a graphical image that is affixed to a display unit, . . . the drapes that are attached to the assembled drapery railing kits at issue constitute readily interchangeable materials that can change with users' needs.") (citation omitted).

[25] *Id.* at 8-9.  *See Banner Stands Ruling* at 10 ("it is evident that the banner stands and back wall kits at issue are designed to incorporate interchangeable graphic materials that can change with users' needs.  Therefore, we find it would be unreasonable to require that the products at issue must be accompanied with affixed graphical material that cannot be removed or altered at a later date.");
(continued...)

The *Solar Panel Mounting Ruling* cited on remand further supports Commerce's interpretation of the revision to the finished goods exclusion methodology. In the ruling, Commerce permitted a third type of good to be excluded from the scope of the Orders: one that "work[s] with removable or replaceable components", to qualify as a final finished good fully assembled "as is" even if it is imported without the "non-essential" component intended to be removable or replaceable.[26] Commerce determined that a kit that enables solar panels to be mounted on roofs or grounds to "create" useful solar panel systems, and which is generally compatible with solar panels available in the market, qualified as a "finished good kit."[27] In so determining, Commerce restated the "two" criteria from the scope to be evaluated to determine if a product qualifies as a "finished goods kit": (1) if all of the necessary parts to fully assemble a finished good with no further fabrication were included, and (2) if the product can be assembled "as is" into a finished product.[28]

Commerce found that the solar mounting system kits contained all of the parts necessary to fully assemble a finished product without further fabrication. It then concluded that although the solar panel mounting kit was imported without the solar panel, the kit could be fully assembled "as is" as required by the second criteria because, "like picture frames, banner stands and

---

[25] (...continued)
see also *EZ Wall Systems Ruling* at 10 ("[a]s in the Banner Stands Scope Ruling, we find it would be unreasonable to that the fabric covers with graphics accompany the EZ wall systems").

[26] *See* Remand at 12-14; *see also Solar Panel Mounting Ruling* at 9.

[27] *Id*., citing *Solar Panel Mounting Ruling* at 6-9. The unassembled solar panel mounting systems consists of extruded aluminum rails, cast aluminum kedges, galvanized steel posts and non-aluminum fasteners.

[28] *Solar Panel Mounting Ruling* at 8.

back wall kits", the mounting systems are "designed to work with removable/replaceable components" and the kits "need not include these non-essential parts to constitute a finished good."[29]

Contrary to the plaintiff's arguments, the *Drapery Rail Kits Remand* and *Solar Panel Mounting Ruling* are not evidence of Commerce changing the way it determines whether all products qualify for the finished goods exclusion. Rather, the court finds that the rulings indicate Commerce has adjusted its methodology for determining if certain types of products qualify for the finished goods kit exclusion in order to avoid unreasonable results when applying the Orders.[30] The court

---

[29] Remand at 12-13, citing *Solar Panel Mounting Ruling* at 6, 9.

[30] The court notes that on remand Commerce appears to have taken a similar approach to interpreting the revised finished goods kit methodology as applied in the *Valves Ruling* and the *Auto Parts Remand*, in order to avoid cases where the previous approach may lead to an "absurd result" for products it determined were subassemblies. Commerce ultimately concluded here on remand that the rulings demonstrate "a subassembly will be excluded if it contains, at the time of importation, all of the parts necessary to assemble a final finished good." Remand at 13. In that process, it referenced the *Valves Ruling*, where it reasoned that requiring all parts needed to assemble a downstream product to be present for it to qualify as a "finished good kit" may in some instances expand the scope of the Orders, which are intended to cover aluminum extrusions. *See* Remand at 10-12, citing *Valves Ruling* at 7, citing scope of the Orders. Commerce's specific reference to the *Valves Ruling* drew attention to its revision of its "finished goods kit" and "subassemblies" analyses and "the manner in which it determines if a given product is a 'finished good' or 'finished goods kit.'" *Id.,* citing *Valves Ruling* at 6-7. In the *Valves Ruling*, Commerce defined a subassembly as "partially assembled merchandise" that is "designed to work with other parts to form a larger structure or system". Commerce determined that the scope language, which includes aluminum extrusion components that form subassemblies "as imported as part of the finished goods kit", as well as the language defining "finished goods kits" both indicated that subassemblies may be excluded from the scope if they enter as finished goods or finished goods kits and require no further finishing or fabrication. Commerce thus concluded that the fire hose valve kit in question, for assembly into a fire truck after importation and containing all the parts necessary to assemble a completed side mount valve and requiring no further finishing or fabrication prior to being assembled, qualified as a "finished goods kit" even without the fire truck accompanying the kit at import. *Valves Ruling* at 7-8.
Commerce also referenced as support for its redetermination the *Auto Parts Remand*, in which it applied the methodology of the *Valves Ruling* in determining certain auto parts for
(continued...)

Court No. 13-00018                                                                                              Page 14

finds that Commerce's remand definition of the "finished goods kit" methodology, as applied in the *Drapery Rail Kits Remand* and *Solar Panel Mounting Ruling*, reflects the rulings and scope language, is reasonable, and is supported by substantial evidence.

## B. Application of Methodology

Although on remand Commerce reasonably defined the methodology applied in the *Drapery Rail Kits Remand* and *Solar Panel Mounting Ruling*, it has failed to provide substantial evidence to support a rational connection for its conclusion that the analysis from the rulings, as so construed, is not applicable to the Trim Kits.[31] As discussed *supra*, the language Commerce used to describe its revised methodology in the remand reasonably allows for the application of the revised analysis to three types of goods: goods that are "designed to display . . . customizable materials," or goods "designed to incorporate customizable materials," or goods "designed to . . . work with removable or replaceable components."[32] On remand, Commerce concluded that although the Trim Kits include all the necessary parts to assemble a finished trim kit, may be assembled "as is", and require no further fabrication or finishing, they are not analogous to the products in the rulings because they do not "incorporate or display customizable materials and therefore the

---

[30] (...continued)
heating/cooling systems of a car as subassemblies because they were "inherently part of a larger whole." It found that the auto parts qualified as finished goods because they were both ready for installation with no additional fabrication or finishing required, and that they were ready for assembly without any additional hardware or parts even considering that they were imported without a car. *See* Remand at 11-12, citing *Auto Parts Remand* at 10.

[31] *See Amanda Foods*, 33 CIT 1407, 1417, 647 F.Supp.2d 1368, 1379 (2009), cited by *Yangzhou Bestpak Gifts & Crafts Co., Ltd. v. United States*, 716 F.3d 1370, 1378 (Fed. Cir. 2013).

[32] Remand at 13-16, Def's Reply to Comm. at 5-6, 8-9, 13, Pl's Comm. in Resp. at 6.

Court No. 13-00018 Page 15

reasoning of the *Drapery Rail Kits and Solar Panel Mounting Systems Remand* does not apply." *Id.* The court finds that Commerce provides substantial evidence to support its determination that Trim Kits do not "incorporate" customizable material. However, the court also finds that Commerce fails to point to substantial evidence to support the finding that the Trim Kits are not intended to "display" an appliance or "work with removable or replaceable components."

The plaintiff contends that its Trim Kits, when affixed to the cabinetry surrounding an appliance, are akin to the products evaluated in the rulings and serve the purpose of the "aesthetic enhancement of stainless steel refrigerators and freezers". The plaintiff argues that, like the drapery rails in the *Drapery Rail Kits Remand*, the banner stand displays in the *Banner Stands Ruling*, and the solar panel kits in the *Solar Panel Mounting Ruling*, the Trim Kits are designed to enhance the use of the removable or interchangeable components they display. The plaintiff also claims the Trim Kits meet the "finished goods kits" criteria under the rulings, because the kits can be assembled "as is" into a finished good and are sold separately from customizable appliances. *See* Remand at 6, 9, 15, *see also* Pl's Remand Submission at 4-6, 8. The plaintiff contests that Commerce did not provide an explanation of why the customizable nature of Trim Kits is not instructive in qualifying those as excluded finished goods, when Commerce determined that the "customizable" nature of the drapery rail kits considered in the *Drapery Rail Kits Remand* was crucial to exclusion of those products from the scope of the Orders.[33]

Commerce opposes the plaintiff's argument, claiming that the *Drapery Rail Kits Remand* and *Solar Panel Mounting Ruling* did not evaluate if the kits "enhanced" a customizable

---

[33] *See* Remand at 9, citing Pl's Remand Submission at 6.

material, as Meridian avers, but instead rested its consideration on whether the kits "incorporated the customizable materials."[34] Addressing the criteron that a kit must "incorporate" a customizable good, Commerce distinguishes a Trim Kit, which is affixed to cabinetry surrounding an opening for an appliance, from goods that are "incorporated" by being hung, mounted or inserted onto or into the imported kit.[35] After conducting its analysis of why a Trim Kit does qualify as a good that "incorporates" a customizable appliance, Commerce concludes that the Trim Kits do not "display *or* incorporate a refrigerator" (italics added). *Id.* The analysis and explanations in the remand provide the court with sufficient clarity on how Commerce reached its determination that Trim Kits do not "incorporate" a refrigerator, but the same cannot be said for Commerce's determination that the Trim Kits do not "display" an appliance. *See Timken U.S. Corp. v. United States*, 421 F.3d at 1355 (citation omitted).

Commerce provides no analysis, outside of conclusory statements, to support its conclusion that an "aesthetic frame" designed to "enhance the appearance of the cabinetry surrounding the appliance in the consumer's home and lend[ ] a customized, 'built-in' look" is not intended to "display" a "customizable" freezer or refrigerator unit. To support its determination, Commerce only states that the "aesthetic" function of the plaintiff's Trim Kits does not place the kits

---

[34] Remand at 15, citing *Drapery Rail Kits Remand* at 8 (describing the product as being "designed to incorporate readily interchangeable drapers or curtains that can change with users' needs and are intended to be customizable["]) and *Solar Panel Mounting Ruling* at 9 (describing the product as being "designed to work with removable/replaceable components".).

[35] Remand at 15, citing Scope of the Orders; *Banner Stands Ruling* at 10. Commerce referenced to the drapes in the *Drapery Rail Kits Remand* that were "incorporated" by hanging on a rail, the solar panels being mounted on mounts in the *Solar Panel Mounting Ruling*, and a picture "inserted" into a picture frame with glass and backing for photo frames expressly included in the Orders.

in the same category as picture frames or drapery rail kits because the same could also be said for carpet trim, a product expressly included in the Orders that enhances a floor and that can be used with interchangeable carpets. Remand at 15. But in the *Drapery Rail Kits Remand*, Commerce expressly states that the decorative bracket and finials of the drapery rail kit serve both a functional and aesthetic purpose. Arguably, a decorative drapery rail aesthetically enhances the appearance of a drape, and a picture frame aesthetically enhances the appearance of a photograph, and both can be used with interchangeable materials. Here, however, Commerce provides no analysis on why a photo frame is a means to display a customizable photograph or why a graphic display unit or a drapery rail are means to display their respective customizable components, and why a Trim Kit is not a means to do likewise.[36] The mere conclusory statement that the Trim Kits share a characteristic with a good expressly included in the Orders does not amount to substantial evidence on the record that the goods do not in fact "display" a customizable material. The court finds no direction for distinguishing between those goods which "incorporate" and those goods which "display," and it is left without direction as to the meaning of the latter term as well as Commerce's reasoning behind this portion of its remand determination. Commerce fails to adequately address in its remand what is required for a product to qualify as one designed to "display" a customizable good and has not explained with sufficient clarity why Trim Kits do not meet this criterion.

　　　　　Commerce also fails to expressly conclude or analyze in its remand if, like the products in the *Solar Panel Mounting Ruling*, the Trim Kits are designed to "work with

---

[36] *See, e.g.*, Remand at 16, stating only that the Trim Kits are not a "means to display customizable materials".

Court No. 13-00018 Page 18

removable/replaceable components" that can change with user needs.[37] As discussed *supra*, Commerce concluded that the reasoning of the *Solar Panel Mounting Ruling* does not apply to Trim Kits. However, it arrived at this conclusion only after it had evaluated if the Trim Kits "incorporate" customizable materials, without mentioning if the kits "work with removable/replaceable components" or otherwise conducting a separate analysis for this criterion. *See* Remand at 15. After conducting its "incorporate" analysis, Commerce acknowledges that the Trim Kits can be assembled "as is," but it concludes the fact that they are sold separately from an appliance irrelevant because the same can be said of the carpet trim and fence posts, products expressly covered by the Orders. However, Commerce provides no explanation or analysis for this determination, and the court is unsure of the significance -- if any -- that Commerce places on this quality when determining a good's ability to "work with removable/replaceable components." This feature is also, it would seem, present in the solar mounting system sold separately from the solar panels it is designed to work with that formed the basis of the *Solar Panel Mounting Ruling*. Commerce does not provide any explanation to distinguish these products as they relate to Trim Kits or explanation or analysis of what is required of a product to qualify as "work[ing] with removable/replaceable components," or why the appliances the Trim Kits ascetically enhance do not constitute "non-essential" removable or replaceable parts for purposes of applying the revised "finished goods kit" analysis from the *Solar*

---

[37] Remand at 12-14, referencing *Solar Panel Mounting Ruling* at 6, 9. As mentioned, Commerce explains that in the *Solar Panel Mounting Ruling* it found that "like picture frames, banner stands, and backwall kits, the mounting systems are designed to work with removable/replaceable components".

*Panel Mounting Ruling.*[38] In other words, Commerce's analysis falls short of that minimally cleared path that would enable the reader to understand the logic of the remand.

Therefore, the court cannot conclude that Commerce's determination that the Trim Kits are not analogous to the products designed to "work with removable/replaceable components" in the *Solar Panel Mounting Ruling* or designed to "display customizable materials" in the *Drapery Rail Kits Remand*, and its determination that the methodology or logic of these rulings does not apply to the Trim Kits, are supported by substantial evidence. The court agrees that it did not "direct or require Commerce find that Meridian's trim kits are excluded" in the Opinion,[39] and it here expresses no view on the correctness of the *Drapery Rail Kits Remand* or *Solar Panel Mounting Ruling* (or any other prior ruling, for that matter), it only here observes that Commerce's ruling on remand evinces inconsistency therewith. On further remand, Commerce must support its remand decision with findings of fact grounded in substantial evidence of record,[40] and if it again reaches the same conclusion, it must sufficiently explain why the Trim Kits do not meet the "additional criteria identified" in the prior scope rulings in order for the court to understand and review the analysis.[41]

---

[38] Remand at 12-13, referencing *Solar Panel Mounting Ruling* at 6, 9. As discussed *supra*, in the *Solar Panel Mounting Ruling*, it was determined that the mounting systems which worked with removable/replaceable components did not need to include the "non-essential parts", being solar panels, to constitute a finished good.

[39] Def's Reply to Comm. at 6, 9.

[40] *Union Steel v. United States*, 33 CIT 1392, 1399, 645 F. Supp. 2d 1298, 1305 (2009) *opinion set aside on reconsideration*, 35 CIT ___, 804 F. Supp 2d 1356 (2011) *judgment entered*, Slip Op. 13-105, 35 CIT ___ (Aug. 8, 2013).

[41] Remand at 16. *See Int'l Imaging Materials, Inc. v. U.S. International Trade Comm'n*, 29 CIT __, Slip. Op. 06-11 at 13 (Jan. 23, 2006).

### III. Conclusion

As it stands, the administrative redetermination that the Trim Kits do not constitute a "finished goods kit" excluded from the scope of the antidumping and countervailing duty orders on aluminum extrusions from the People's Republic of China relies upon incomplete analysis that is in conflict with substantial evidence of record. *See Yangzhou Bestpak Gifts & Crafts Co., Ltd. v. United States*, 716 F.3d at 1378, *see also Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951). The matter must therefore be, and hereby is, remanded again. On remand, Commerce shall proceed from a clean slate on the question of whether the Trim Kits fall within the scope of the Orders, fully taking into account the prior relevant scope rulings in accordance with the foregoing. Commerce shall submit its remand results no later than 60 days after the date of this order, and the parties shall submit their proposed scheduling order(s) for comments on the second remand results within 10 days thereafter.

**So ordered.**

/s/ R. Kenton Musgrave
R. Kenton Musgrave, Senior Judge

Dated: March 26, 2014
         New York, New York