Slip Op. 14 - 158

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| MERIDIAN PRODUCTS, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Before: R. Kenton Musgrave, Senior Judge |
| | : | Court No. 13-00018 |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## OPINION

[Sustaining second results of remand on scope of antidumping and countervailing duty orders on aluminum extrusions from the People's Republic of China as to "trim kits".]

Dated: December 29, 2014

*Daniel Cannistra* and *Richard P. Massony*, Crowell & Moring LLP, of Washington DC, for the plaintiff.

*Tara K. Hogan*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington DC, for the defendant. On the brief were *Stuart F. Delery*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Reginald T. Blades, Jr.*, Assistant Director. Of counsel on the brief was *Jessica M. Forton*, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington DC.

Musgrave, Senior Judge:   This opinion addresses the *Final Results of Redetermination Pursuant to Court Remand, Meridian Products, LLC v. United States*, Court No. 13-0018, PDoc 29 (June 17, 2014) ("Second Remand") of the International Trade Administration of the U.S. Department of Commerce ("Commerce") pursuant to *Meridian Products, LLC v. United States*, 38 CIT ___, Slip Op. 14-32 (Mar. 26, 2014) ("*Meridian II*"). The plaintiff, Meridian Products LLC, a U.S. importer of refrigerator/freezer trim kits, moves for a third remand of this

action challenging various aspects of the Second Remand.  Meridian's Motion for Remand and

accompanying Cmts in Resp. to Second Redetermination Upon Remand, PDoc 35 (July 15, 2014)

("Pl's Mot.").  The defendant asks that the court sustain the Second Remand results, claiming that

it complied with the court's order and that its determination is both supported by substantial

evidence and is in accordance with law.  Def's Resp. to Cmts Regarding the Second Remand

Redetermination, PDoc 38 (Aug. 8, 2014) ("Def's Resp.").

　　　　Upon review of the Second Remand results, the court finds that the redetermination

complies with the judicial orders in *Meridian II* and sustains the results.

## I. *Background*

　　　　Familiarity with the facts of this case as provided in the court's prior opinions is

presumed, but background is supplemented herein for ease of understanding.  *See Meridian II*; *see*

*also Meridian Products, LLC v. United States*, 37 CIT ___, Slip Op. 13-75 (June 17, 2013)

("*Meridian I*") .  In *Meridian I*, the court remanded to Commerce, directing it to reconsider if the

plaintiff's trim kits fell within finished goods scope exclusion of the antidumping and countervailing

duty orders on aluminum extrusions from the People's Republic of China[1] as applied in the *Side*

*Mount Valve Controls Scope Ruling*, the *Drapery Rail Kits Remand*, and the *Auto Parts Remand*.[2]

---

[1] *See Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order*, 76 Fed. Reg. 30650 (May 26, 2011) ("AD Order") & *Aluminum Extrusions from the People's Republic of China: Countervailing Duty Order*, 76 Fed. Reg. 30653 (May 26, 2011) ("CVD Order") (collectively, "*Orders*").

[2] *See Meridian I* at 4; *see also* Memorandum to Christian Marsh, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, "Initiation and Preliminary Scope Ruling on Side Mount Valve Controls" (Sept. 24, 2012), *aff'd*, Final Scope Ruling on Side Mount Valve Controls (Oct. 26, 2012) ("*Side Mount Valve Controls Scope Ruling*"); *Final Results of*
(continued...)

In *Meridian II*, the court remanded to Commerce a second time, directing it to "proceed from a clean

slate on the question of whether the [t]rim [k]its fall within the scope of the *Orders*, fully taking into

account the prior relevant scope rulings", including evaluating the trim kits under the finished goods

exclusion methodology in the *Drapery Rail Kits Remand* and *Solar Panel Mounting Ruling*.[3]

       The relevant scope language, which Commerce must first examine in any scope

determination to determine whether merchandise falls within the scope of an antidumping duty

order,[4] is as follows:

> The scope also excludes [1] *finished merchandise* containing aluminum extrusions
> as parts that are *fully and permanently assembled and completed at the time of entry,*
> *such as finished windows with glass, doors with glass or vinyl, picture frames with*
> *glass pane and backing material, and solar panels.*  The scope also excludes [2]
> *finished goods containing aluminum extrusions that are entered unassembled in a*
> *"finished goods kit."*  A finished goods kit is understood to mean a packaged
> combination of parts that contains, at the time of importation, all of the necessary
> parts to fully assemble a final finished good and requires no further finishing or
> fabrication, such as cutting or punching, and is assembled "as is" into a finished
> product.  *An imported product will not be considered a "finished goods kit" and*

---

[2] (...continued)
*Redetermination Pursuant to Court Remand, Rowley Co. v. United States*, Ct. No. 12-00055 (Feb.
28, 2013) ("*Drapery Rail Kits Remand*"); *Final Results of Redetermination Pursuant to Court
Remand Aluminum Extrusions from the People's Republic of China, Valeo, Inc., Valeo Engine
Cooling Inc., and Valeo Control Corp. v. United States*, Ct. No. 12-00381 (Feb. 13, 2013) ("*Auto
Parts Remand*").

[3] *See Meridian II* at 20; *see also id.* at 3, referencing Memorandum to Christian Marsh,
"Final Scope Ruling on Clenergy (Xiamen) Technology's Solar Panel Mounting Systems" (Oct. 31,
2012) ("*Solar Panel Mounting Ruling*") and *Drapery Rail Kits Remand*.

[4] *See Mid Continent Nail Corp. v. United States*, 725 F.3d 1295, 1302 (Fed. Cir. 2013)
(internal citations omitted); *see also Walgreen Co. of Deerfield, IL v. United States*, 620 F.3d 1350,
1357 (Fed. Cir. 2010) ("it is the language of Commerce's final order that defines the scope of the
order albeit 'with the aid of the antidumping petition, the factual findings and legal conclusions
adduced from the administrative investigations, and the preliminary order'") (quoting *Duferco Steel,
Inc. v. United States*, 296 F.3d 1087, 1097 (Fed. Cir. 2002)).

> *therefore excluded from the scope of the* [*Orders*] *merely by including fasteners such as screws, bolts, etc. in the packaging with an aluminum extrusion product.*

*Orders*, 76 Fed. Reg. at 30651 and 30654 (italics and bracketing added).

      In the Second Remand, Commerce again determined that the plaintiff's trim kits fell within the scope of the *Orders* as subject aluminum extrusions identified by reference to their end use: as "frames" for major appliances.[5]  Commerce first determined that the trim kits did not qualify for the "finished merchandise" exclusion.  It found that the kits consisted entirely of aluminum extrusions, fasteners, and extraneous materials.  Based on the plaintiff's own description of its trim kits as consisting of a package of finished parts which, when assembled, will make up a customized frame around a single freezer unit or single refrigerator unit, Commerce found that the kits were included with the scope language of the *Orders* and did not meet the "finished merchandise" exclusion because they entered the U.S. unassembled.  *See* Second Remand at 5-6, referencing "Aluminum Extrusions from the People's Republic of China: Request for Scope Ruling for Refrigerator/Freezer Trim Kits" (Nov. 13, 2012) ("Trim Kits Scope Ruling Request") at 1-2; *see also id.* at 12-14, 22-24.

      Commerce next determined that the plaintiff's trim kits did not qualify as an excluded "finished goods kit" on the ground that, again, they consisted entirely of aluminum extrusions, fasteners, and extraneous materials and fell within the express limitation to the exclusion.  *Id.* at 12-14, 23-25.  Commerce distinguished the trim kits from the goods in the *Drapery Rail Kits Remand*

---

[5]  *See* Second Remand at 2, referencing Draft Results of Redetermination Pursuant to Court Remand, *Meridian Products, LLC v. United States*, Court No. 13-0018, Slip Op. 14-32, PDoc 40-1 (May 14, 2014) ("Second Remand Draft") at 11-19; *see also id.* at 6, referencing Memorandum to Christian Marsh, "Final Scope Ruling on Refrigerator/Freezer Trim Kits" (Dec. 17, 2012) ("*Trim Kits Scope Ruling*") at 10, quoting the scope of the *Orders*.

and in the *Solar Panel Mounting Ruling* by first determining that unlike the trim kits, the goods in

the *Drapery Rail Kits Remand* and *Solar Panel Mounting Ruling* were eligible for the "finished

goods kit" exclusion because those goods "do not consist entirely of aluminum extrusions" and did

not fall within the "limitation" to the exclusion.[6] Pursuant to the court's instruction, Commerce then

analyzed the trim kits ability to "display" or "work with" an appliance.  *See* Second Remand at 15,

referencing *Meridian II* at 14; *see also id.* at 25-27, referencing *Meridian II* at 16.   Commerce

determined that the trim kits "merely frame the space into which the refrigerator is placed" and were

therefore unlike the goods in those rulings, because in those rulings the subject goods were designed

to "display" or "work with" a missing non-essential interchangeable component by the functional

means of holding the component.  Second Remand at 15-20, 25-26.

   The plaintiff filed with the court its comments in response to Commerce's Second

Remand objecting to the findings of the Second Remand.  In its filing, the plaintiff claims in the

Second Remand Commerce did not comply with the court's order because it did not sufficiently

explain why the trim kits do not meet the criteria for the finished goods exclusion and did not

distinguish between goods that "incorporate" and goods that "display".  Pl's Mot. at 1.

   The defendant responds that it complied with the court's remand order, maintaining

that its finding that the trim kits consist solely of subject aluminum extrusions, fasteners, and

extraneous materials and do not satisfy the two finished goods exclusions is supported by the scope

---

  [6] *See* Second Remand at 15, referencing Second Remand Draft at 14, citing *Solar Panel Mounting Ruling* at 6-7 (summarizing in the Second Remand that "the products at issue were comprised of non-subject aluminum and steel products") and *Drapery Rail Kits Remand* at 4 (summarizing in the Second Remand that "the products at issue included decorative finials and brackets that were made of steel"); *see also id.* at 24-25.

language and prior scope rulings.  Def's Resp. at 1, 10-19, 22.  The defendant further argues it

provided a reasonable explanation of why the *Drapery Rail Kits Remand* and *Solar Panel Mounting*

*Ruling* did not apply to the plaintiff's trim kits that is supported by substantial evidence.  *Id.* at 19-

22.

II.  *Discussion*

1.  Exhaustion of Administrative Remedies

At the outset, the defendant claims that the plaintiff raised certain arguments in its

comments before the court with respect to both the "finished goods kit" and "finished merchandise"

exclusions[7] that the plaintiff did not raise in its draft comments on the Second Remand, and that the

plaintiff has accordingly failed to exhaust its administrative remedies concerning those issues.  *See*

Def's Resp. at 13-15, referencing Pl's Mot. at 4; *see also id.* at 17, referencing Pl's Mot. at 5; *id.* at

17-18, referencing Pl's Mot. at 6-10.  Specifically, the defendant contends the following are

precluded by failure to exhaust: the argument opposing the determination that the trim kits were not

eligible for the "finished goods kit" exclusion because Commerce found that they consist solely of

aluminum extrusions, fasteners, and extraneous materials;[8] the argument that Commerce erroneously

---

[7]  The defendant correctly points out that the "[O]rders identify the finished goods kit exclusion and the finished merchandise exclusion as two separate exclusions".  Def's Resp. at 12 fn.7.

[8]  *See Id.* at 13-15, referencing Second Remand at 24 (which noted that "Meridian does not address this first criterion that [Commerce] considers in its determination as to whether a product satisfies the exclusion for a finished goods kit, and does not appear to contest [Commerce]'s interpretation, as discussed in the *Geodesic Domes Scope Ruling* and elsewhere, that, in order to qualify for the finished goods kit exclusion, the kit must consist of merchandise other than aluminum extrusions, fasteners and extraneous materials") and Cmts on the Draft Results of Redetermination Pursuant to the Remand Order of the U.S. Court of International Trade in *Meridian Products, LLC*
(continued...)

applied an "aluminum content limitation" with the effect of disqualifying goods consisting entirely

of aluminum extrusions from ever satisfying either the "finished merchandise" or "finished goods

kit" exclusions;[9] and the argument that Commerce is inconsistent in the test(s) it applies in order to

determine if the non-aluminum components of a good qualify it for the exclusions.  Def's Resp. at

17, referencing Pl's Mot. at 5, citing Memorandum to Christian Marsh, "Final Scope Ruling on

Titan's Scaffolding Planks" (July 8, 2014) ("*Scaffolding Planks Scope Ruling*").

       The court tends to take a strict approach to the doctrine of administrative exhaustion

in accordance with its statutory mandate.  *See SeAH Steel Corp. v. United States*, 35 CIT ___, 764

F. Supp. 2d 1322, 1325 (2011), referencing *Jiaxing Brother Fastener Co., Ltd. v. United States*, 34

CIT ___, 751 F. Supp. 2d 1345, 1355-57 (2010); *see also* 28 U.S.C. §2637(d) (stating that in trade

cases the court "shall, where appropriate, require the exhaustion of administrative remedies").

Exhaustion is generally appropriate in antidumping proceedings as it protects the administrative

agency's authority and promotes judicial efficiency by permitting the agency to apply its expertise,

correct its own administrative mistakes, and create an adequate record for judicial review.  *See

Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006) (discussing the "two main purposes" of exhaustion of

administrative remedies); *see also Sandvik Steel Co. v. United States*, 164 F.3d 596, 599-600 (Fed.

---

[8] (...continued)
*v. United States*, Court No. 13-00018, Slip Op. 14-32, PDoc 40-2 (May 19, 2014) ("Pl's Cmts on Second Remand Draft"); *see also* Pl's Mot. at 3-4.

[9] *See* Def's Resp. at 17-19; *see also* Pl's Mot. at 4-10 (arguing its trim kits consist of more than merely "aluminum extrusions" and claiming that Commerce has erroneously created a "aluminum content" limitation in its Second Remand not supported by the scope language, previous rulings, or prior published guidance, by concluding that goods which consist entirely of aluminum extrusions may not be excluded from the scope of the *Orders* as "finished merchandise" or a "finished goods kit").

Cir. 1998) (internal citations omitted); *Ta Chen Stainless Steel Pipe, Ltd. v. United States*, 28 CIT

627, 644, 342 F. Supp. 2d 1191, 1206 (2004) (internal citations omitted).

   In the Second Remand Draft, Commerce defined both the "finished merchandise" and

"finished goods kit" exclusions to the *Orders*.  Citing previous scope rulings, Commerce discussed

its finding that a good that consists entirely of subject aluminum extrusions, fasteners, and

extraneous materials will not qualify for either exclusion[10] and then, critically, Commerce found that

the trim kits consist entirely of aluminum extrusions "of various shapes and forms" within the scope

definition as well as fasteners and extraneous materials and that they did not qualify for either of the

two exclusions.  Second Remand Draft at 13-14, referencing Trim Kits Scope Ruling Request at 5-6.

   Although the plaintiff had the opportunity in its comments before Commerce to

challenge these factual bases for Commerce's determinations and develop the administrative record,

it did not do so with sufficient specificity at that level to enable proper judicial review of the

arguments it now here considers relevant.[11]  *See Dorbest Ltd. v. United States*, 604 F.3d 1363, 1375

---

  [10]  Second Remand Draft at 11-14 (stating that, consistent with the scope of the *Orders*, the *Geodesic Domes Scope Ruling* and the *Cutting and Marking Edges Scope Ruling* determined that, "a product may not consist entirely of aluminum extrusions and be excluded as a finished goods kit or finished merchandise"), referencing Memorandum to Christian Marsh, "Final Scope Ruling on J.A. Hancock Co., Inc.'s Geodesic Structures" (July 17, 2012) ("*Geodesic Domes Scope Ruling*") and Memorandum to Christopher Marsh, "Aluminum Extrusions from the People's Republic of China: Final Scope Ruling on Cutting and Marking Edges" (Nov. 13, 2012) ("*Cutting and Marking Edges Scope Ruling*") and *Orders*, 76 Fed. Reg. at 30651.

  [11]  The plaintiff made three arguments in its comments on the Second Remand Draft before Commerce:  First, it contended that the scope definition in the *Petition* is clear, and that the subject merchandise intended to be included in the scope of the *Orders* is *parts* of door frames as opposed to *finished* door frames, and that the trim kits are akin to final finished door frames.  Pl's Cmts on Second Remand Draft at 1-2, referencing Petitions for the Imposition of Antidumping and Countervailing duties: Aluminum Extrusions from the People's Republic of China (Mar. 31, 2010)
(continued...)

(Fed. Cir. 2010) ("Commerce regulations require the presentation of all issues and arguments in a party's administrative case brief"), citing 19 C.F.R. §351.309(c)(2)) ("The case brief must present all arguments that continue in the submitter's view to be relevant to the Secretary's final determination."); *see also Aluminum Extrusions Fair Trade Comm. v. United States*, 37 CIT ___, ___, 938 F. Supp. 2d 1337, 1342 (2013) (time to object to "new discretionary policy regarding an interpretation of a scope exclusion" is at preliminary determination).  The plaintiff did not continue to press in its comments on the Second Remand Draft those arguments it had raised during the First Remand relating to its claim that its trim kits consisted of more than aluminum extrusions, fasteners, and extraneous materials,[12] nor, apparently, did it incorporate arguments by reference.  For the court

---

[11] (...continued)
("Petition") at 4.  Second, it averred that Commerce did not sufficiently explain why the trim kits are not intended to "display" an appliance simply because they do not physically hold an appliance in place.  Third, it argued that Commerce could not have arrived at its conclusion that the trim kits do not "display" a customizable appliance based on the application of the scope language and the descriptions of the merchandise alone without undertaking an analysis pursuant to the criteria listed in 19 U.S.C. §351.225(k)(2) to support that finding, which Commerce expressly stated it did not do. *Id.* at 2-4.

[12] These arguments included: that Commerce mistakenly characterized the non-aluminum components of its trim kits as an "exception to the finished goods exclusion" but that the addition of fasteners is not an exception but rather "a sensible clarification that the addition of fasteners will not automatically qualify an aluminum extrusion product as a finished good"; that many of its non-aluminum extrusion components serve the same purpose as the non-aluminum extrusion components at issue in the *Drapery Rail Kits Remand*; that Commerce did not address aluminum content in the *Drapery Rail Kits Remand* but still found that the products were finished goods kits because the products were intended to be customizable; that the trim kits are "comprised of *more* non-aluminum componentry than drapery kits"; that the content of aluminum extrusions should be irrelevant to the issue of whether the products are finished goods; that products which could consist predominantly, or entirely, of aluminum extrusions and fasteners which are listed in the *Petition* were excluded from the *Orders* as finished goods kits; that the excluded goods in the *Auto Parts Remand* consist entirely of aluminum extrusions; that Commerce expanded its "aluminum-only" exception to encompass products comprised of both aluminum extrusions and non-aluminum extrusion components; that the
(continued...)

to address these issues properly the plaintiff needed to raise them in its arguments first before

Commerce, in order to assist Commerce in compiling an administrative record that is adequate for

judicial review. *See McCarthy v. Madigan*, 503 U.S. 140, 145 (1992) ("exhaustion of the

administrative procedure may produce a useful record for subsequent judicial consideration,

especially in a complex or technical [or] factual context").

The plaintiff has not done so, and none of the apparent exceptions to exhaustion

apply. *See SeAH Steel Corp.*, *supra*, 35 CIT at ___, 764 F. Supp. 2d at 1325-26 (listing the

exceptions as, "where exhaustion would be 'a useless formality,' intervening legal authority 'might

have materially affected the agency's actions,' the issue involves 'a pure question of law not

requiring further factual development,' where 'clearly applicable precedent' should have bound the

agency, or where the party 'had no opportunity' to raise the issue before the agency"), referencing

*Jiaxing*, *supra*, 34 CIT at ___, 751 F. Supp. 2d at 1355-56 (internal citations omitted). Accordingly,

the court will not consider those arguments of the plaintiff's summarized above.[13]

---

[12] (...continued)
exception to the finished goods exclusion for "fasteners" and products that "otherwise do not
'complete the kit'" are not based on the scope language, that Commerce should apply the dictionary
definition of "fasteners"; and that the plastic hinge covers and steel brackets in the trim kits are not
fasteners even if the exceptions to the finished goods exclusion were valid. *Final Results of
Redetermination Pursuant to Court Remand, Meridian Products, LLC v. United States*, Court No.
13-0018, Slip Op. 13-75, PDoc 17 (Aug. 15, 2013) ("First Remand") at 16-18, referencing
"Aluminum Extrusions from the People's Republic of China: Comment Following Remand
Regarding Refrigerator/Freezer Trim Kits" (July 1, 2013) at 6-10.

[13] *See Ta Chen Stainless Steel Pipe*, *supra*, 28 CIT at 644, 342 F. Supp. 2d at 1206, quoting
*JCM, Ltd. v. United States*, 210 F.3d 1357, 1359 (Fed. Cir. 2000) (citing *Sandvik Steel Co.*, *supra*,
164 F.3d at 599-600) (In antidumping cases "Congress has prescribed a clear, step-by-step process
for a claimant to follow, . . . the failure to do so precludes [the claimant] from obtaining review of
that issue in the Court of International Trade.").

    2.  "Finished Goods Kit" Exclusion

        The plaintiff's lack of exhaustion impacts the remaining arguments it raised

concerning Commerce's determination that the trim kits did not qualify for the "finished goods kit"

exclusion.  The Second Remand's analysis clarifies that Commerce essentially interprets the

methodology applied in the *Solar Panel Mounting Ruling* and the *Drapery Rail Kits Remand* as the

latter part of a multi-step analysis it uses in examining whether the "finished goods kit" exclusion

is applicable to a given product.  The first step in Commerce's analysis is determining whether the

unassembled good under consideration overcomes the "limitation" to the "finished goods kit"

exclusion.  If the good does not overcome the limitation, it is within scope; if it does, the question

is then whether the good contains all the necessary parts to fully assemble a final finished good.[14]

If it does contain all the necessary parts to fully assemble a final finished good and otherwise meets

the definition of a "finished goods kit", the good is outside the scope; if it does not, the next question

the rulings address is whether the "missing" "customizable/interchangeable" component is "non-

essential" to the final finished good by determining if the good is intended to "display" or "work

_____

    [14]  Second Remand at 15, referencing Second Remand Draft at 14 (explaining that when
evaluating a good under the exclusion, Commerce ends its analysis if it determines a kit is comprised
entirely of aluminum extrusions, fasteners, and extraneous materials and does not therefore pass the
initial exclusionary step, but that it provided an application of the further analysis from the rulings
in the Second Remand to comply with the court's order in *Meridian II*).

with" the component.[15]  If it is, and otherwise meets the definition of a "finished goods kit", the

product is outside scope.

Addressing that analysis in part, the plaintiff faults Commerce's definition of

"display" as applied to the trim kits, the definition of which was applied from the *Solar Panel*

*Mounting Ruling* and the *Drapery Rail Kits Remand*.[16]  Commerce's interpretation thereof is

---

[15] Commerce concluded that the products expressly excluded from the scope of the *Orders*
and excluded in prior scope rulings (*e.g.*, the picture frames, drapery rail kits, banner stands, and
solar panel mounting systems) "serve the functional purpose of holding a customizable/
interchangeable product in each instance" and that this functional purpose goes "beyond the
aesthetic purpose of displaying interchangeable material by virtue of proximity."  *See* Second
Remand at 25, referencing Second Remand Draft at 17 and *Solar Panel Mounting Ruling* at 9
(determining that, "like picture frames, banner stands, and backwall kits, the mounting systems are
designed to work with removable/replaceable components"); *see also* Second Remand at 15-16,
citing *Drapery Rail Kits Remand* at 8 (stating in the Second Remand that, "in the *Drapery Rail Kits
Remand*, the missing component was the drape which is held by the drapery rail . . . [Commerce]
found that, like those products, 'the drapery rail kits contain all of the parts necessary to assemble
a drapery rail system, save for the decorative drapers or curtains that may be affixed at a later date,
and are designed to meet the specifications of the end customer'").

[16] The plaintiff argues that in the Second Remand Commerce has failed to comply with the
court's remand order by not distinguishing between those goods that "incorporate" and those goods
that "display" customizable materials, that Commerce's reasoning for defining these terms is not
coherent, that Commerce does not apply the plain meaning of the word "display" as required where
"a term with an 'accumulated, settled meaning' has no special meaning in antidumping law".  Pl's
Mot. at 13-16, referencing *NSK Ltd. v. United States*, 115 F.3d 965, 974 (Fed. Cir. 1997) ("[w]here
Congress uses terms that have accumulated settled meaning under either equity or the common law,
a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the
established meaning of these terms") (citing *N.L.R.B. v. Amax Coal Co.*, 453 U.S. 322 (1981)).  The
plaintiff also argues that Commerce does not support with substantial evidence its conclusion that
a good's ability to incorporate, display, or work with customizable materials affects its ability to
qualify as a "finished goods kit".  Pl's Mot. at 16.  Furthermore, the plaintiff claims that Commerce
based its finding that the plaintiff's trim kits are not intended to display an appliance on incorrect
facts, as the trim kits "attach to the appliance and the surrounding cabinetry".  Pl's Mot. at 15.  It
avers that Commerce could not have concluded that the trim kits are not intended to "display or
work with a customizable appliance" and that they "do not hold the appliance like a mounting
system holds a solar panel, or a drapery rail holds a drape" without evaluating the physical
                                                                                        (continued...)

normally entitled to "significant deference", *Global Commodity Grp. LLC v. United States*, 709 F.3d

1134, 1138 (Fed. Cir. 2013) (internal citations omitted) (granting Commerce "significant deference"

to interpret the scope of an antidumping order), however the court cannot reach the merits of the

contention in any event because the plaintiff's arguments over "display" only arise in the context

of the last step of Commerce's analysis.  Further consideration here of that aspect is precluded due

to the plaintiff's failure to press the contention with greater specificity at the administrative level,

*i.e.,* exhaustion.

In clarifying its methodology, Commerce distinguished the trim kits from the

products in the aforementioned rulings by finding that the products in the rulings met the initial

requirement for the "finished goods kit" exclusion and that the trim kits did not.  Second Remand

at 24-25.  In order to analyze whether the trim kits are intended to "display" (or for that matter

"work with") a "non-essential" "customizable/interchangeable" component, Commerce concluded

in this instance that it only needed to rely on the plaintiff's own description of its trim kits in its

scope ruling request rather than engage in a full "(k)(2)" factors analysis.[17]  Commenting on the

Second Remand Draft, the plaintiff only disagreed with Commerce's finding that its "[t]rim [k]its

---

[16] (...continued)
characteristics of the product, expectations of the purchaser, and ultimate use of the product under
the "(k)(2)" factors. Pl's Mot. at 10-11, 14.  *See* 19 C.F.R. §351.225(k)(2); *see also supra*, footnote
11.

[17]  As explained by the defendant, "[f]rom Meridian's description of the product, it is clear
that the trim kits at issue do not hold the refrigerator[; r]ather, they merely frame the space into
which the refrigerator is placed."  Second Remand at 26, referencing Trim Kits Scope Ruling
Request at 1-2; *see also id.* at 5 and Second Remand Draft at 4-5 (noting that "[a]s described in the
Scope Request filed by Meridian, the trim kits at issue consist of three different styles of complete
aluminum trim kit packages which are utilized as an aesthetic frame around the perimeter of (though
not attached to) a major home kitchen appliance, such as a refrigerator").

are not intended to 'display' an appliance simply because they do not physically hold the appliance in place" and only argued that "Commerce cannot know if [t]rim [k]its are intended to display a customizable appliance purely based on the application and descriptions of the merchandise" without applying the "(k)(2)" criteria, which Commerce explicitly stated it had not done.  Pl's Cmts on the Second Remand Draft at 3.

Thus, proceeding from a "clean slate" during the Second Remand, Meridian did not revive its earlier arguments, raised during the First Remand, with sufficient particularity to contest Commerce's factual distinction or distinguishment of the trim kits from the *Solar Panel Mounting Ruling* and the *Drapery Rail Kits Remand* on the basis of the first step of the analysis, as argued by the defendant.[18]  The court is left unable to further address the plaintiff's critique of "display", because "display" is only applicable in the final step of Commerce's analysis and the plaintiff did not exhaust its administrative remedies on the finding of whether the trim kits consisted of "more than" aluminum extrusions, fasteners, and extraneous materials.  Commerce having ended its consideration of the issue at step one, with the kits falling within the limitation to the "finished goods kit" exclusion, and the plaintiff having failed to exhaust its remedies on the factual predicate underpinning that consideration, the court's review is thus constrained.

---

[18]  Commerce found that the products at issue in the *Solar Panel Mounting Ruling* were comprised of "non-subject aluminum and steel products" and that the products at issue in the *Drapery Rail Kits Remand* "included decorative finials and brackets that were made of steel." Second Remand at 15, referencing Second Remand Draft at 14, citing *Solar Panel Mounting Ruling* at 6-7 and *Drapery Rail Kits Remand* at 4. The court need not consider whether the trim kits consist of more than aluminum extrusions, "fasteners", and "extraneous materials" as the plaintiff has not pressed the argument to this extent.

In distinguishing the trim kits based on this reasoning, upon which it did not rely in the First Remand, Commerce has facially complied with the court's orders in *Meridian II*.  *See Meridian II* at 2-3, referencing *Solar Panel Mounting Ruling* and *Drapery Rail Kits Remand*; *see also id.* at 15, 17-20.  There appearing to be no further challenges to Commerce's determination that the trim kits do not qualify as a "finished goods kit", the Second Remand will be sustained as to the defendant's "finished goods kit" exclusion findings.

3. "Finished Merchandise" Exclusion

The plaintiff also advances several arguments to support its claim that its trim kits qualify as "finished merchandise".  Here, however, the plaintiff is now pursuing the wrong path. The plaintiff first proposes its own interpretation of the *Orders* and exclusion, stating that the *Orders* are only intended to cover aluminum extrusions that could be "further processed into something else after importation" and that "once an extrusion is bent, shaped, molded, assembled, *etc.* it is no longer an extrusion; it has become something else".  Pl's Mot. at 4.  It claims that its trim kits should accordingly be excluded as they are "akin to a fully finished door frame that has been so completely and irrevocably processed that it can never become anything other than a finished frame."[19]  *Id.* at 6.  The plaintiff points to the *Petition* to further advance its claim that its trim kits qualify as "finished merchandise" that are analogous to finished door frames, and it maintains that the

---

[19]  The court notes that in its filings the plaintiff used the broader term "finished goods" to make this particular argument but the plaintiff appears to be referring to the "finished merchandise" exclusion.  *See id.* at 3-4 ("[E]ach trim kit is akin to a fully finished door frame that has been so completely and irrevocably processed that it can never become anything other than a finished frame. As such, [the trim kits] qualify as finished goods and should be excluded from the scope of the [*O*]*rders*. . . .  Alternatively, if trim kits do not qualify as finished goods, they still meet the exclusion criteria for finished goods kits and should therefore be excluded from the scope of the [*O*]*rders*.") (italics and bracketing added).

petitioners made a clear distinction between parts of door frames that were to be included in the

scope of the *Orders*, as opposed to excluded final finished door frames, and that like final finished

door frames its kits are "completely and permanently processed to the extent that they are suitable

only for their ultimate purpose at the time of importation[,] . . . are fully fabricated[,] and do not

require further cutting, punching, or other processing prior to installation".[20]

   While the plaintiff's argument might be reasonable, it is Commerce, not the plaintiff,

that is tasked with interpreting the scope of the *Orders*, and Commerce's interpretation is to be

sustained so long as the interpretation reasonably clarifies the scope.  *See, e.g.*, *Sandvik Steel Co.*,

*supra*, 164 F.3d at 600 ("the order's meaning and scope are issues particularly within the expertise

of [Commerce]").  The plaintiff's argument does not, *per se*, render Commerce's interpretation

unreasonable.  Further, the argument is directed towards requirements of the "finished goods kit"

exclusion and ignores the explicit language in the "finished merchandise" exclusion of the *Orders*

that requires full and permanent assembly of the parts for final finished products "at the time of

importation", as well as the language of the *Petition* that requires a good be "imported in finished

form, *i.e.*, fully and permanently assembled" in order for a good to qualify for that exclusion.  *See

Orders*, 76 Fed. Reg. at 30651; *see also Petition* at 5; Second Remand at 22-23.

---

 [20]  *See* Pl's Mot. at 3-4; *see also id.* at 12-13, citing *Petition* at 4-5 (stating the requested
scope definition for the subject merchandise includes "*parts of products* that are assembled or
otherwise further processed after importation, including, but not limited to, window frames, door
frames, solar panels, curtain walls, or furniture" and excludes "*final finished goods* containing
aluminum extrusions that are imported in finished form, *i.e.*, fully and permanently assembled, such
as finished window frames, *door frames*, picture frames, and solar panels.  The scope also excludes
unassembled final finished goods containing aluminum extrusions, *e.g.*, 'kits,' that, at the time of
importation, contain all of the necessary parts to assemble the finished good") (plaintiff's italics).

In the Second Remand Commerce determined that the trim kits do not qualify as "finished merchandise" first because they exist entirely of "aluminum extrusions, fasteners and extraneous materials", and second because they enter the U.S. unassembled. *See* Second Remand at 13-14, 22-24. As discussed *supra*, the plaintiff has failed to exhaust its administrative remedies concerning Commerce's factual determination that its trim kits consist entirely of aluminum extrusions, fasteners, and extraneous materials and do not meet one of the two proposed requirements of the "finished merchandise" exclusion.[21] Concerning the second requirement of this exclusion, the plaintiff does not claim that its trim kits enter the U.S. assembled; rather, it argues that defining the trim kits as an "unfinished good simply because the product is unassembled upon entry is absolutely nonsensical" because Commerce recognizes that a "kit" is considered a finished good if it contains all the parts required to assemble the finished good. Pl's Mot. at 12-13. The argument is unpersuasive, because in advancing it the plaintiff ignores that there are two *separate* exclusions for finished goods and that the exclusions each have separate requirements that a good must meet in order to qualify. The scope language expressly supports the defendant's second requirement for the "finished merchandise" exclusion that a good must be "fully and permanently assembled and

---

[21] In explaining this requirement, Commerce noted that the list of products that meet this criteria in the scope language were "finished windows with glass, doors with glass or vinyl, picture frames with glass pane and backing material, and solar panels" and it determined that a window frame without the glass, a door frame without the glass or vinyl door, or a picture frame without the glass pane or backing, would not meet the exclusion criteria. It also cited Memorandum to Christian Marsh, "Final Scope Ruling on Window Kits" (Dec. 6, 2011) ("*Window Kits Scope Ruling*"), and stated that in the ruling "[c]onsistent with [the scope language], [Commerce] determined that certain window kits were outside the scope of the *Orders* provided that 'they contain at the time of importation all of the parts, including the glass panels, necessary to assemble a finished window or windows'". Second Remand at 23, also referencing scope of the *Orders* and Trim Kits Scope Ruling Request at 5-6.

completed at the time of entry". *Orders*, 76 Fed. Reg. at 30651. The *Petition* also supports this

requirement stating the scope excludes "*final finished goods* containing aluminum extrusions that

are imported in finished form, *i.e.*, *fully and permanently assembled*, such as finished window

frames, *door frames*, picture frames, and solar panes."[22]

        The plaintiff is correct in stating that a good will not be considered an unfinished

good "merely because it is unassembled upon entry", as that trait only disqualifies the good from

the "finished merchandise" exclusion while still permitting it, possibly, to qualify as a "finished

goods kit". However, based upon the plaintiff's own description of its trim kits being a packaged

combination of parts that contains, at the time of importation, all of the necessary components *to*

*assemble* a complete frame to surround a refrigerator or freezer, Commerce's determination, that

even if the trim kits when assembled after importation are akin to a "finished door frame" they still

enter the U.S. as unassembled as parts and thus do not qualify for the "finished merchandise"

exclusion, was not improper. Likewise, neither was Commerce's determination that the trim kits

are necessarily included within the language of the scope of the *Orders* as "parts of final finished

products that are assembled after importation" if they do not satisfy the "finished goods kit"

exclusion. *See* Second Remand at 6, 23; *see also* Trim Kits Scope Ruling Request at 5-6.

---

        [22] *See Petition* at 5 (italics added) (the *Petition* states that the scope also excludes
"unassembled final finished goods containing aluminum extrusions, *e.g.*, 'kits,' that, at the time of
importation, contain all of the necessary parts to assemble the finished goods."); *see also Ad Hoc
Shrimp Trade Action Comm. v. United States*, 33 CIT 915, 924, 637 F. Supp. 2d.1166, 1174-75
(2009) ("[u]nder the statutory scheme, Commerce owes deference to the intent of the proposed scope
of an antidumping investigation as expressed in the antidumping petition"), referencing 19 U.S.C.
§§ 1673, 1673a(b) (additional internal citations omitted).

There being no further challenges to Commerce's determination that the trim kits do not qualify as "finished merchandise", the Second Remand will be sustained as to the defendant's "finished merchandise" exclusion findings.

### III.  *Conclusion*

Based upon the foregoing, the second redetermination results will be sustained and a separate judgment to that effect entered.

/s/  R. Kenton Musgrave
R. Kenton Musgrave, Senior Judge

Dated: December 29, 2014
        New York, New York