Slip Op. 15 - 67

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| MERIDIAN PRODUCTS, LLC, Plaintiff, v. UNITED STATES, Defendant. | Before: R. Kenton Musgrave, Senior Judge<br>Court No. 13-00018 |

**OPINION AND ORDER**

[Granting plaintiff's motion for reconsideration, vacating judgment, and remanding to Commerce a third time.]

Dated: June 23, 2015

*Daniel J. Cannistra* and *Richard P. Massony*, Crowell & Moring LLP, of Washington DC, for the plaintiff.

*Tara K. Hogan*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington DC, for the defendant. With her on the brief were *Benjamin C. Mizer*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Reginald T. Blades, Jr.*, Assistant Director. Of counsel on the brief was *Jessica M. Link*, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington DC.

Musgrave, Senior Judge: Pursuant to USCIT Rules 46 and 59(b), the plaintiff Meridian Products LLC ("Meridian"), a U.S. importer, moves for reconsideration of the court's decision in *Meridian Products, LLC v. United States*, 38 CIT ___, 37 F. Supp. 3d 1342 (2014) ("*Meridian III*"). *See* Pl's Mot. for Reconsideration of the Court's Order in Slip Opinion 14-158, PDoc 50 (Jan. 28, 2015) ("Pl's Mot."). Familiarity with prior proceedings and *Meridian III*, which sustained the *Final Results of Redetermination Pursuant to Court Remand, Meridian Products, LLC*

*v. United States*, Court No. 13-0018, PDoc 29 (June 17, 2014) ("Second Remand"), is presumed. *See Meridian III; see also Meridian Products, LLC v. United States*, 38 CIT ___, 971 F. Supp. 2d 1259 (2014) ("*Meridian II*"); *Meridian Products, LLC v. United States*, 37 CIT ___, Slip Op. 13-75 (June 17, 2013) ("*Meridian I*").

Conducted by the International Trade Administration of the U.S. Department of Commerce ("Commerce"), the matter concerns a scope ruling under the antidumping and countervailing duty orders ("*Orders*") on aluminum extrusions from the People's Republic of China ("PRC"),[1] on the plaintiff's imported refrigerator/freezer trim kits ("Trim Kits") from the PRC. The plaintiff's precise motion asks for reconsideration of the exhaustion question that decided *Meridian III*, arguing that it "had no opportunity" to raise before the agency the issue here, that exhaustion of administrative remedies was a useless formality, and that the issue is "a pure question of law" not requiring further factual development. Pl's Mot. at 6-11. The defendant United States asks the court to uphold *Meridian III*, countering that the plaintiff fails to identify any factual or legal error in the prior decision on the exhaustion question. *See* Def's Resp. to Pl's Mot. for Reconsideration, PDoc51 (Mar. 4, 2015) ("Def's Resp.").

After considering the plaintiff's motion, the court reconsiders its prior decision, vacates judgment, and remands the case back to Commerce again for application of the proper definition of the "finished goods kit" exclusion, in compliance with the language of those *Orders*, and for redetermination of whether the Trim Kits fall within the scope of those *Orders*.

---

[1] *See Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order*, 76 Fed. Reg. 30650 (May 26, 2011) & *Aluminum Extrusions from the People's Republic of China: Countervailing Duty Order*, 76 Fed. Reg. 30653 (May 26, 2011) (collectively, "*Orders*").

I. *Background*

Brief background is here outlined for ease of understanding. After reviewing the findings of Commerce's First Remand,[2] the court remanded to Commerce a second time, directing it to "proceed from a clean slate on the question of whether the Trim Kits fall within the scope of the *Orders*, fully taking into account the prior relevant scope rulings." *See Meridian II*, *supra*, 971 F. Supp. 2d at 1271.

Commerce's draft remand, issued Wednesday May 14, 2014, found that an "exception to the 'finished goods kit' exclusion" exists, to wit that "an imported product will not be considered a 'finished goods kit' . . . merely by including fasteners such as screws, bolts, *etc.* in the packaging with an aluminum extrusions product", that a product may not consist entirely of aluminum extrusions and be excluded as a "finished goods kit", and that the plaintiff's Trim Kits, which consist entirely of subject aluminum extrusions, fasteners, and "extraneous" materials, do not satisfy the "finished goods kit" exclusion to the *Orders*.[3] It also applied the analysis in the *Drapery Rail Kits Remand* and the *Solar Panel Mounting Systems Ruling* to the Trim Kits,[4] and continued to find that

---

[2] *Final Results of the Redetermination Pursuant to Court Remand, Meridian Products, LLC v. United States*, Ct. No. 13-00018, Slip Op. 13-75, PDoc17 (Aug. 15, 2013) ("First Remand").

[3] *See* Draft Results of Redetermination Pursuant to Court Remand, *Meridian Products, LLC v. United States*, Ct. No. 13-00018, PDoc 40-1, Slip Op. 14-32 ("Draft Remand") at 12-14 (May 14, 2014), referencing Memorandum to Christian Marsh, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, "Final Scope Ruling on J.A. Hancock, Inc.'s Geodesic Structures" (July 17, 2012) ("*Geodesic Domes Scope Ruling*") at 7 and Letter from Daniel Cannistra, Crowell & Moring LLP, to the Secretary of Commerce, Antidumping and Countervailing Duty Orders on Aluminum Extrusions from the People's Republic of China: Request for Scope Ruling for Refrigerator/Freezer Trim Kits (Nov. 13, 2012) ("Scope Ruling Request") at 5-2, and *Orders*.

[4] *See Final Results of Redetermination Pursuant to Court Remand, Rowley Co. v. United*
(continued...)

the kits were not analogous to the goods in those rulings and were within the scope of the *Orders*. Draft Remand at 14-19. Commerce then gave interested parties a mere five days to comment on the Draft Remand. *See id.* at 19.

Meridian's comments on the Draft Remand addressed Commerce's analysis of the applicability of the *Drapery Rail Kits Remand* and *Solar Panel Mounting Systems Ruling* to the Trim Kits, and noted that its comments were abbreviated in light of the limited time Commerce provided. Meridian did not, however, comment on the portion of Commerce's analysis in which Commerce determined that the "finished goods kit" exclusion language, *see infra*, meant that Meridian's Trim Kits, which Commerce found consisted entirely of aluminum extrusions, fasteners and "extraneous" materials, did not qualify for the exclusion. *See generally* Meridian's Cmts. on the Draft Remand, PDoc 40-2 (May 19, 2014). In the Second Remand, Commerce continued to find that "kits [that] consist only of aluminum extrusions, fasteners, and extraneous materials do not meet the exclusion criteria for 'finished goods kits'" and that Meridian's Trim Kits do not qualify as "finished goods kits", "because they consist entirely of aluminum extrusions, fasteners and extraneous materials", further that in its comments on remand Meridian did not challenge or dispute this finding. Second Remand at 12-14 and 23-25. Meridian previously sought to challenge this part of Commerce's analysis before the court. Meridian's Motion for Remand, PDoc 35 (July 15, 2014), ECF No. 35. However, the court sustained the Second Remand results, finding that the plaintiff had failed to

---

[4] (...continued)
*States*, Ct. No. 12-00055 (Feb. 28, 2013) ("*Drapery Rail Kits Remand*"); *see also* Memorandum to Christian Marsh, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, "Final Scope Ruling on Clenergy (Xiamen) Technology's Solar Panel Mounting Systems" (Oct. 31, 2012) ("*Solar Panel Mounting Systems Ruling*").

exhaust its administrative remedies by not raising or incorporating by reference those arguments before Commerce. *See Meridian III*, *supra*, 37 F. Supp. 3d at 1342-54.

A. Request for Reconsideration:
"Pure Issue of Law" Exception to Exhaustion

"The major grounds justifying a grant of a motion to reconsider a judgment are an intervening change in the controlling law, the availability of new evidence, the need to correct a clear factual or legal error, or the need to prevent manifest injustice." *Ford Motor Co. v. United States*, 30 CIT 1587, 1588 (2006) (internal citation omitted).[5] Through its arguments, Meridian asks for relief from *Meridian III*, contending that three of these exceptions apply.

While "[t]he exhaustion doctrine requires a party to present its claims to the relevant administrative agency for the agency's consideration before raising these claims to the Court", *Shangdong Huarong Machinery Co., Ltd. v. United States*, 30 CIT 1269, 1305, 435 F. Supp. 2d 1261, 1292 (2006) (internal citations omitted), and the court tends to take a strict stance on exhaustion, the requirement that a party exhaust its administrative remedies has been excused in trade cases "where exhaustion would be 'a useless formality,' intervening legal authority 'might have

[5] "[A] motion for reconsideration serves as 'a mechanism to correct a significant flaw in the original judgment' by directing the Court to review material points of law or fact previously overlooked." *RHI Refractories Liaoning Co., Ltd. v. United States*, 35 CIT ___, ___, 752 F. Supp. 2d 1377, 1380 (2011) ("*RHI Refractories*"), quoting *United States v. UPS Customshouse Brokerage, Inc.*, 34 CIT 745, 748, 714 F. Supp. 2d 1296, 1301 (2010). Although a court may exercise its "discretion to rectify a significant flaw in the conduct of the original proceeding, . . . a court should not disturb its prior decision unless it is manifestly erroneous." *See Marvin Furniture (Shanghai) Co. Ltd. v. United States*, 37 CIT ___, ___, 899 F. Supp. 2d 1352, 1353 (2013) (internal citations and quotations omitted). The court further "will not grant such a motion merely to give a losing party another chance to re-litigate the case or present arguments it previously raised." *Totes-Isotoner Corp. v. United States*, 32 CIT 1172, 1173, 580 F. Supp. 2d 1371, 1374 (2008) (internal citation and quotations omitted).

materially affected the agency's actions,' the issue involves 'a pure question of law not requiring further factual development,' where 'clearly applicable precedent' should have bound the agency, or where the party 'had no opportunity' to raise the issue before the agency." *See SeAH Steel Corp. v. United States*, 35 CIT ___, ___, 764 F. Supp. 2d 1322, 1325-26 (2011), referencing *Jiaxing Brother Fastener Co., Ltd. v. United States*, 34 CIT 1455, 1466, 751 F. Supp. 2d 1345, 1355-56 (2010) (internal citations omitted).

Meridian claims, fundamentally, that it should be excused from exhausting its administrative remedies because (1) it "had no opportunity" to raise the issue before the agency, (2) re-iterating points it had already made to Commerce would have been a useless formality in "Commerce's informal redetermination procedures", and (3) the issue was "a pure question of law'. *See* Pl's Mot. at 2-11. In its response, the defendant maintains that Meridian not only failed to exhaust administrative remedy concerning Commerce's "aluminum content" analysis for the "finished goods kit" exclusion but also effectively failed to exhaust its arguments that those exceptions to exhaustion apply. The defendant avers that instead of seeking leave from the court to respond to Commerce's exhaustion argument, which was initially raised in Commerce's response to the plaintiff's comments on remand, Meridian has here first responded to the arguments after judgment was entered, and that as a result the court should dismiss Meridian's motion for reconsideration.[6]

---

[6] *See* Def's Resp. at 7, referencing, *e.g.*, *Caldwell v. United States*, 391 F.3d 1226, 1235 (Fed. Cir. 2004) and Defendant's Resp. to Cmts. Regarding the Second Remand Redetermination, PDoc 38 at 13-18 (Aug. 8, 2014) ("Def's Resp. to Cmts.").

"[P]arties cannot use a motion for reconsideration to raise new legal arguments that could have been raised before a judgment was issued." *Bank of Ann Arbor v. Everest Nat. Ins. Co.*, 563 F. App'x 473, 476 (6th Cir. 2014), referencing *Roger Miller Music, Inc. v. Sony/ATV Publ'g*, 477 F.3d 383, 395 (6th Cir. 2007). However, section 2637(d) of Title 28, United States Code, provides that "the Court of International Trade shall, *where appropriate*, require the exhaustion of administrative remedies [pursuant to Rule 59]" (court's italics), and granting a motion for reconsideration, likewise, rests within the discretion of the court. *See Agro Dutch Indus. Ltd. v. United States*, 508 F.3d 1024, 1029 (Fed. Cir. 2007) ("*Agro Dutch*"), quoting *Corus Staal BV v. United States*, 502 F.3d 1370, 1381 (Fed. Cir. 2007).

In this matter, the need to prevent manifest injustice favors ruling for the plaintiff. The fundamental question here, of whether a good consisting entirely of aluminum extrusions, fasteners, and extraneous materials does not qualify for the "finished goods kit" exclusion, depends entirely upon the proper reading of the scope language, which is a question of law. Although Commerce is entitled to "substantial deference with regard to its interpretation of its own antidumping duty orders," *King Supply Co., LLC v. United States*, 674 F.3d 1343, 1348 (Fed. Cir. 2012) ("*King Supply*") (citation omitted), Commerce may not "'interpret' an antidumping order so as to change the scope of that order, nor can Commerce interpret an order in a manner contrary to its terms." *Eckstrom Indus., Inc. v. United States*, 254 F.3d 1068, 1072 (Fed. Cir. 2001) (citation omitted). Parties are generally required to exhaust administrative remedies to aid Commerce in interpretation, but just as determining the proper reading of a statute presents a "pure" legal question that can be addressed despite a party's failure to raise such an argument in the proceedings before

Commerce,[7] the language of the scope itself can present a "pure" question of law to the extent the language is not susceptible to interpretation. *See* 19 C.F.R. §351.225(c)(1); *see*, *e.g.*, *Duferco Steel, Inc. v. United States*, 296 F.3d 1087, 1089 (Fed. Cir. 2002) ("*Duferco*") ("[s]cope orders may be interpreted as including subject merchandise only if they contain language that specifically includes the subject merchandise or may be reasonably interpreted to include it"). Because the scope language here speaks for itself, it is alone sufficient to resolve the exhaustion issue (*see infra*) as a "pure" question of law; therefore that exception to exhaustion (that the plaintiff has now directed the court to review) is applicable here.[8] Accordingly, Meridian's arguments on the "finished goods kit" exclusion in the scope language, and the merits of Meridian's claim, can and must be addressed despite its failure to forcefully raise the arguments in the proceedings before Commerce.[9]

---

[7] *See Agro Dutch*, *supra*, 508 F.3d at 1029 ("the proper interpretation of [19 U.S.C.] §1675(a)(4) presents a 'pure question of law' that can be addressed on appeal despite [a party's] failure to raise such an argument in the proceedings before Commerce"); *compare id. with Consolidated Bearings v. United States*, 348 F.3d 997, 1003 (Fed. Cir. 2003) ("*Consolidated Bearings*") (where additional development of a factual record was required to adequately address the plaintiff's claims, and accordingly it was not appropriate to apply the "pure legal question" exception).

[8] *See Consolidated Bearings*, 348 F.3d at 1003 (*ibid*); *see also Hormel v. Helvering*, 312 U.S. 552, 558 (1941) (exhaustion is not required "where the obvious result would be a plain miscarriage of justice"); *Pakfood Pub. Co. v. United States*, 34 CIT 1122, 1144-45, 724 F. Supp. 2d 1327, 1350 (2010) (exhaustion is not required "where the benefits of exhaustion are inapplicable or outweighed by other concerns") (internal citations omitted).

[9] *See RHI Refractories*, *supra*, 35 CIT at ___, 752 F. Supp. 2d at 1380; *see also NSK Corp. v. United States*, 32 CIT 1497, 1501 (2008) ("a clear legal error will not require a court to grant a motion for reconsideration where that error does not affect the result reached in the first instance"), quoting *Ford Motor Co. v. United States*, 30 CIT 1587, 1588 (2006). Contrary to plaintiff's assertions, the court did not decide the substantive issue in the first two determinations. *Cf.* Pl's Mot. at 10-11 *with Meridian I* at 1-6 (remanding for consideration of the finished goods scope exclusion under the *Auto Parts Remand*, *Drapery Rail Kits Remand*, and *Side Mount Valve Controls*

(continued...)

B. Commerce's Interpretation of the
"Finished Goods Kit" Exclusion to the Orders

When determining the scope of an antidumping and/or countervailing duty order, Commerce applies a three-step approach established by the appellate court in *Duerfco*.[10] The first step of this approach is to determine if the governing language is ambiguous. If the language is ambiguous, an analysis of the 19 C.F.R. §351.225 subsections (k)(1) and (k)(2) factors is required.[11] If it is not ambiguous, "the plain meaning of the language governs", *ArcelorMittal*, *supra*, 694 F.3d

---

[9] (...continued)
*Scope Ruling*, which were unaddressed in the underlying scope ruling); *see also Meridian II*, *supra*, 971 F.Supp. 2d at 1268-71 (remanding for a further explanation of why the Trim Kits "are not intended to 'display' an appliance or 'work with removable or replaceable components'"). As discussed, *supra*, the court need not address at this time the plaintiff's other arguments on exhaustion, as the "pure question of law" ground is sufficient to exempt that requirement. *See* Pl's Mot. 2-11; *see also* USCIT Rule 46. Nevertheless, the court notes that *Meridian III* directed Commerce to "proceed from a clean slate on the question of whether the Trim Kits fall within the scope of the *Orders*, fully taking into account the prior relevant scope rulings", *Meridian III*, *supra* 37 F. Supp. 3d at 1271, that the plaintiff was invited to comment on the Draft Remand in which Commerce included an analysis evaluating if a good consisting entirely of aluminum extrusions, fasteners, and "extraneous" materials could qualify for the "finished goods kit" exclusion, and admonishes the plaintiff that, generally speaking, "[i]n litigation contesting antidumping determinations, the exhaustion requirement applies to a situation . . . in which the Department invited a party to submit comments on draft remand results." *Carpenter Tech. Corp. v. United States*, 35 CIT ___, ___, 774 F. Supp. 2d 1343, 1349 (2011) (internal citation omitted).

[10] *A.L. Patterson, Inc. v. U.S.*, 36 CIT ___ , Court No. 11-00192, Slip. Op. 12-103 (2012) at 8, referencing, *ArcelorMittal Stainless Belgium N.V. v. United States*, 35 CIT___, Court No. 08-00434, Slip. Op. 11-82 (2011) ("*ArcelorMittal*") at 6 (citing *Duferco*, *supra*, 296 F.3d at 1096-97 and *Tak Fat Trading Co. v. United States*, 396 F.3d 1378, 1382 (Fed. Cir. 2005)).

[11] If upon examination Commerce finds the scope language ambiguous, it evaluates the language pursuant to the subsection (k)(1) considerations of 19 C.F.R. §351.225**.** If that analysis is not dispositive, then Commerce further analyzes the product under subsection (k)(2) of that regulation. *See* 19 C.F.R. §351.225(k)(1)&(2); *see also Laminated Woven Sacks Comm. v. United States*, 34 CIT ___, ___, 716 F. Supp. 2d 1316, 1321-22 (2010) (internal citations omitted).

82, 87 (Fed. Cir. 2012), and "[t]here is nothing more to interpret". *Allegheny Bradford Corp. v. United States*, 28 CIT 830, 845, 342 F. Supp. 2d 1172, 1185 (2004) ("*Allegheny Bradford*").[12]

The relevant scope language governing the matter at bar is as follows:

> Subject aluminum extrusions may be described at the time of importation *as parts for final finished products that are assembled after importation, including, but not limited to, window frames, door frames, solar panels, curtain walls or furniture*. Such parts that otherwise meet the definition of aluminum extrusions are included in the scope. The scope includes the aluminum extrusion components that are attached (*e.g.* by welding or fasteners) to form subassemblies, *i.e.*, partially assembled merchandised unless imported as part of the *finished goods 'kit'* defined further below. The scope does not include the non-aluminum extrusion components of subassemblies or subject kits.
>
> Subject extrusions may be identified with reference to their end use, such as fence posts, electrical conduits, door thresholds, carpet trim, or heat sinks . . . . Such goods are subject merchandise if they otherwise meet the scope definition, regardless of whether they are ready for use at the time of importation.

76 Fed. Reg. at 30650-51 and 30654 (court's italics). The scope language provides for two exclusions:

> The scope . . . excludes *finished merchandise* containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry, such as finished *windows with glass, doors with glass or vinyl, picture frames with glass pane and backing material, and solar panels*. The scope also excludes finished goods containing aluminum extrusions that are entered unassembled in a "*finished goods kit.*" A *finished goods kit* is understood to mean a packaged

---

[12] *See Duferco*, *supra*, 296 F.3d at 1097 (stating that the scope language of the order is "the cornerstone" of a scope analysis); *see also Mid Continent Nail Corp. v. United States*, 725 F.3d 1295, 1302-04 (Fed. Cir. 2013) (internal citations omitted) ("*Mid Continent*") (stating that the scope language of the order is "the predicate for the interpretive process" by which Commerce must first examine in any scope determination to decide whether merchandise falls within the scope of an antidumping duty order); *see also Walgreen Co. of Deerfield, IL v. United States*, 620 F.3d 1350, 1357 (Fed. Cir. 2010) ("*Walgreen*") ("it is the language of Commerce's final order that defines the scope of the order albeit 'with the aid of the antidumping petition, the factual findings and legal conclusions adduced from the administrative investigations, and the preliminary order'") (quoting *Duferco* at *id*., quoting *Smith Corona Corp. v. United States*, 915 F.2d 683, 685 (Fed. Cir. 1990)).

> combination of parts that contains, at the time of importation, *all of the necessary parts* to fully assemble a final finished good and requires no further finishing or fabrication, such as cutting or punching, and is assembled "as is" into a finished product.

*Id.* (court's italics). The scope language also clarifies the "finished goods kit" exclusion stating,

> An imported product will not be considered a "finished goods kit" and therefore excluded from the scope of the [*Orders*] merely by including fasteners such as screws, bolts, *etc*. in the packaging with an aluminum extrusion product.

*Id.* (court's italics and bracketing).

As mentioned, although Commerce "enjoys substantial freedom to interpret and clarify its . . . orders" by way of its scope rulings,[13] and its interpretations are entitled to "significant deference" if reasonable and supported by substantial evidence, antidumping and countervailing duty orders "may be interpreted as including subject merchandise only if they contain language that specifically includes the subject merchandise or may be reasonably interpreted to include it." *Duferco*, *supra*, 296 F.3d at 1089. As explained in *Allegheny Bradford*, Commerce must only meet

> a low threshold to show that it justifiably found an ambiguity in scope language . . . but it is not justifiable to identify an ambiguity where none exists. . . . Commerce cannot make a scope determination that conflicts with an order's terms, nor can it interpret an order in a way that changes the order's scope.

*Allegheny Bradford*, *supra*, 28 CIT at 843, 342 F. Supp. 2d at 1184, referencing *Novosteel SA v. United States*, 284 F.3d 1261, 1272 (Fed. Cir. 2002) and *Duferco*, *supra*, 296 F.3d at 1087, 1094-95.

In the Second Remand, Commerce found that the brackets, screws, and hinge covers in Meridian's Trim Kits were "fasteners", that the wrench and installation kit were "extraneous materials", and that these parts did not qualify the Trim Kits (the rest of which were made up of

---

[13] *Ericsson GE Mobile Communications, Inc. v. United States*, 60 F.3d 778, 782 (Fed. Cir. 1995).

unassembled aluminum extrusions, *i.e.*, "finished parts")[14], as a "finished goods kit" because while the Trim Kits "might otherwise meet the definition", under the scope language "kits which consist only of aluminum extrusions, fasteners and extraneous materials do not meet the exclusion criteria for 'finished goods kits'". Second Remand at 13-14, 23-24, referencing *Geodesic Domes Scope Ruling* at 6-7. To support "interpreting" the exclusionary language, Commerce relied on the "clarification" in the scope language of the exclusion that provides as follows: "[a]n imported product will not be considered a 'finished goods kit' and therefore excluded from the scope of the investigation *merely* by including fasteners such as screws, bolts, *etc.* in the packaging with an aluminum extrusion product" (court's italics). *See id.* at 12-14, 23-25; *see also Orders*.

Context renders unreasonable Commerce's reading of the exclusionary language of the scope, and its application of the scope language to the Trim Kits is in conflict with the *Orders*' terms. The reason for that holding is as follows. The specific governing language[15] of the *Orders* unambiguously lists the requirements a kit must meet in order to be excluded from the scope as a "finished goods kit". The kit must be (1) an unassembled combination of parts that (2) includes at

---

[14] *See* Def's Resp. to Cmts. at 6-7; *see also* Second Remand at 5 ("Trim kits are sold as a package of finished parts which, when assembled, will make up a customized frame around a single freezer unit or a single refrigerator unit. Each trim kit consists of extruded aluminum forms, made from aluminum alloy. The trim kits also include a customer installation kit, hexagonal tool, fasteners, and a plastic hinge cover, which is not assembled into the trim.") and at 7.

[15] *Legacy Classic Furniture, Inc. v. United States*, 36 CIT ___,___, 867 F. Supp. 2d 1321, 1329-30 (2012) (noting that specific exclusions are intentionally carved out of general scope inclusions with the purpose of narrowing the expanse of the general scope, and these specific exclusions "should trump the general"), referencing *Wheatland Tube v. United States*, 161 F.3d 1365, 1371 (Fed. Cir. 1998) (noting that "to 'allow Commerce to assess antidumping duties on products intentionally omitted from the ITC's injury investigation' would frustrate the purpose of the antidumping laws.") (citing 19 U.S.C. §1673).

the time of importation *all* of the necessary parts to fully assemble a final finished good, with no further finishing or fabrication (such as cutting or punching), and (3) be capable of assembly "as is" into a finished product. *See Orders*. The inclusion of "fasteners" or "extraneous materials" is not determinative when qualifying a kit consisting of multiple parts which otherwise meets the exclusionary requirements, as a "finished goods kit". Likewise, there is nothing in the language that indicates that the parts in an otherwise qualifying kit cannot consist entirely of aluminum extrusions. For example, an imported disassembled model Eiffel Tower kit made up entirely of aluminum extrusions with snap-fit joints, which when fully assembled forms that iconic shape, does not need "fasteners" in the sense contemplated by the "finished goods kit" exclusion "clarification", and would apparently qualify for the "finished goods kit" exclusion if it otherwise met the scope-exclusion requirements. Alternatively, if the Eiffel Tower kit did require fasteners to connect the entirely aluminum extrusion parts, but otherwise met the scope-exclusion criteria, it would still apparently qualify for the exclusion. In other words, the exclusionary language does not bar an unassembled "combination of parts" consisting solely of aluminum extrusions, or aluminum extrusions, "fasteners", and "extraneous materials" from qualifying for the exclusion if the combination includes all of the parts necessary for forming a complete finished good.

This reasoning is supported by the scope language itself, in particular at the point where the exclusionary language defining a "finished goods kit" (which requires that "*all of the necessary parts* to *fully assemble* a final finished good" be present at importation) is read in conjunction with the inclusionary scope language (which states that "[s]ubject aluminum extrusions may be described at the time of importation *as parts for final finished products* that are assembled

after importation"). By this language, it is clear that in order to qualify as a "finished goods kit", a kit must contain *every* part required to assemble the final finished good, and it logically follows that if a kit is imported with *all* of the parts necessary to fully assemble the kit into its final finished form, then obviously (and necessarily) some of those "parts" may be fasteners.

The "clarification" language does not support Commerce's reading of the language, but is instead simply an attempt to prevent the circumvention of the scope of the *Orders* by ensuring that the "mere" inclusion of fasteners in a packaged aluminum extrusion product, that does not otherwise meet the scope-exclusion requirements, will not qualify it as a "combination of parts" for the "finished goods kit" exclusion. The record shows that Commerce unreasonably ignored the scope definition of what constitutes a "finished goods kit" by expanding the "clarification" language to exclude the Trim Kits, when that language plainly does not disqualify the plaintiffs's Trim Kits from the exclusion. Commerce accepted the plaintiff's description of the product as consisting of a package of multiple unassembled aluminum "finished parts" with fasteners, a hexagonal tool for fitting said fasteners, a plastic hinge cover, and a booklet instructing how to assemble the parts into a final finished customized frame,[16] but unreasonably found that the presence of the "fasteners", the assembly tool, the plastic hinge cover, and the assembly instruction booklet were "extraneous" in this kit and were, in and of themselves, sufficient to remove the plaintiff's product from the exclusion to the scope of the *Orders*.[17] And although Commerce claims its exclusion of the Trim

---

[16] Second Remand at 5, referencing Scope Ruling Request at 1-2.

[17] Commerce uses the term "extraneous" to define the wrench and installation kit as parts that "entered with the trim kits but that were not part of the final product" but it has effectively applied that term to all non-aluminum parts of the kit, discounting their importance to the final (continued...)

Kits was "consistent with the scope of the *Orders*, which includes products such as window frames, door frames and picture frames, and only excludes products that contain additional, non-aluminum extrusion products (*i.e.*, windows with glass, doors with glass or vinyl, picture frames with glass pane and backing material)",[18] Commerce's reading impermissibly imposes the requirements of the "finished merchandise" exclusion -- which has no dependant bearing on the "finished goods kit" exclusion -- into the requirements of the "finished goods kit" exclusion.[19]

Commerce's reliance on the *Geodesic Domes Scope Ruling* to support its conclusion is also misplaced. While the "petition, factual findings, legal conclusions and preliminary orders"

---

[17] (...continued)
finished product as a whole, and their respective roles in the assembly thereof. *See* Second Remand at 14; *see also* Def's Resp. to Cmts. at 2 (noting that "Commerce determined that the brackets, screws, and hinge covers in Meridian's trim kits were akin to fasteners and, thus, did not qualify the trim kits, *i.e*., an aluminum extrusion product, for the "finished goods kit" exclusion. In addition, Commerce determined that the wrench and installation kit accompanying the trim kits were extraneous materials that were not part of the final product, and thus also did not qualify the trim kits for the "finished goods kit" exclusion.").

[18] Second Remand at 13-14, referencing Draft Remand at 13.

[19] As the court in *Meridian III* (and Commerce itself) pointed out, the scope language lays out two *separate* exclusions for finished goods, the "finished merchandise" and the "finished goods kit" exclusion, each of which contain independent requirements that a good must meet to qualify. *See Meridian III*, *supra*, 37 F. Supp.3d at 1346 fn.7 and 1353; *see also* Def's Resp. to Cmts. at 12 fn. 7 ("Meridian's comments refer to both exclusions as a single 'finished goods exclusion.' The orders identify the finished goods kit exclusion and the finished merchandise exclusion as two separate exclusions."). Commerce also apparently relies on the interpretive canon *expressio unius est exclusio alterius* for its argument. However, the plain language of the "finished goods kit" exclusion clearly addresses what is required for a good to qualify: the listing of "window frames, door frames and picture frames" as items of subject merchandise included in the *Orders,* and the listing of "windows with glass, doors with glass or vinyl, picture frames with glass pane and backing material" as excluded "finished merchandise", does not imply that only goods that contain some non-aluminum part may qualify for the "finished goods kit" exclusion. Application of the cannon was not only unnecessary, it was applied incorrectly. *Cf. Adirondack Med. Ctr. v. Sebelius*, 740 F.3d 692, 697 (D.C. Cir. 2014) (finding the canon a "feeble helper in an administrative setting").

may aid in Commerce's analysis, "they cannot substitute for the language of the order itself", *Walgreen*, *supra*, 620 F.3d at 1357, which in this instance is clear on its face. If "Commerce is entitled to substantial deference with regard to its interpretations of its own antidumping duty orders," *King Supply*, *supra*, 674 F.3d at 1348 (citation omitted), that still presupposes language susceptible to interpretation. Here, like the "irreconcilability of the Order's beveling sentence with the edging characteristics of [the] fittings" considered in *Allegheny Bradford*, *supra*, 28 CIT at 845, 342 F. Supp. 2d at 1185, "[t]here is nothing more to interpret" from the language of the *Orders* as to their applicability to the completeness of the Trim Kits, and no need to evaluate the *Geodesic Domes Scope Ruling*. *Id.* In any event, Commerce has simply grafted the same flawed reasoning it employed in the *Geodesic Domes Scope Ruling* into the Second Remand result.[20]

III. *Conclusion*

While Commerce's interpretation is to be sustained so long as it reasonably clarifies the scope, the court here concludes that Commerce's interpretation in the Second Remand has impermissibly expanded the scope language by placing a restriction on the "finished goods kit" exclusion that is not supported by the plain language of the scope of the *Orders*. *See*, *e.g.*, *Sandvik Steel Co.*, *supra*, 164 F.3d at 600 ("the order's meaning and scope are issues particularly within the expertise of [Commerce]"). As a result, Commerce's reliance on this interpretation to disqualify the

---

[20] In the *Geodesic Domes Scope Ruling*, Commerce found that while a kit containing unassembled parts in the form of aluminum extrusions, screws and assembly instructions "met the initial requirements for inclusion into the "finished goods kit" exclusion" because it contained all of the parts required to fully assemble a final finished good, an "exception to the 'finished goods kit' exclusion" disqualified the geodesic domes from the exclusion, *i.e.*, "an imported product will not be considered a 'finished goods kit' . . . merely by including fasteners such as screws, bolts, *etc.* in the packaging with an aluminum extrusions product". Second Remand at 13, referencing Draft Remand at 12, citing *Geodesic Domes Scope Ruling* at 7 and the *Orders*.

plaintiff's Trim Kits, which "might otherwise meet the definition for a 'finished goods kit' pursuant to the scope of the *Orders*", is not in accordance with law and not supported by substantial evidence. *See* Second Remand at 23-24. Based upon the foregoing, the prior judgment must be, and it hereby is, vacated, and the case must be, and it hereby is, remanded to Commerce a third time, with instructions to provide an interpretation of the "finished goods kit" exclusion to the *Orders* that complies with the scope language and to evaluate the plaintiff's Trim Kits under that interpretation.

Results of redetermination shall be due August 24, 2015. Within ten (10) days of the docketing of those results, the parties shall confer and submit a joint proposed scheduling order or separate proposed scheduling orders governing further proceedings on this matter.

**It is so ordered**.

/s/ R. Kenton Musgrave
R. Kenton Musgrave, Senior Judge

Dated: June 23, 2015
New York, New York